(July 21, 2009)

■ STANFIELD OFFSHORE LEVERAGED ASSETS, LTD., et al., Appellants, v METROPOLITAN LIFE INSURANCE COMPANY et al., Defendants, and CREDIT SUISSE FIRST BOSTON (USA), INC., et al., Respondents. [883 NYS2d 486]—

Judgment, Supreme Court, New York County (Charles E. Ramos, J.), entered May 19, 2008, insofar as appealed from, dismissing as against defendants-respondents the cause of action for aiding and abetting a fraud, and bringing up for review orders, same court and Justice, entered April 23, 2008 and May 8, 2008, which granted motions to dismiss, unanimously affirmed, with costs. Appeal from the aforesaid orders unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Plaintiffs are several Cayman Islands companies and one New York limited partnership with hedge funds that purchased a portion of Meridian Automotive Systems, Inc.'s (Meridian) debt. By purchasing the debt, plaintiffs were assigned the right to collect debt from Meridian in connection with loans that plaintiffs' predecessors-in-interest made to Meridian. Plaintiffs also include some of the original lenders. The loans were made pursuant to two lien credit agreements (referred to as "the First and Second Lien Credit Agreements") that enabled Meridian, a distressed company, to raise $485 million in new credit facilities.[1] Defendants Credit Suisse First Boston (USA), Inc. and Credit Suisse Securities (USA) LLC (referred to collectively as Credit Suisse) were retained by Meridian to act as joint lead arrangers of this refinancing of Meridian, which occurred on April 28, 2004.

Specifically, Meridian retained Credit Suisse and Goldman Sachs (not named as a defendant) and entered into a commitment letter dated March 22, 2004 that provided that Credit Suisse would act as administrative agent and collateral agent and that it and Goldman Sachs would act as joint lead arrangers and joint book managers for the facilities. Credit Suisse and Goldman Sachs received a fee for their role in the April 2004

---

1. This amount was comprised of a $75 million first lien revolving loan, a $235 million first lien term loan and a $175 million second lien term loan. Meridian used $337 million in proceeds from these new facilities to repay its prior existing secured bank debt.

refinancing. A total of $21,000,000 in fees was paid, of which Credit Suisse's share was $17,087,742.

The loan agreements expressly provided that plaintiffs had "independently and without reliance upon [Credit Suisse] . . . and based on such documents and information as [plaintiffs] ha[ve] deemed appropriate, made [their] own credit analysis and decision to enter into this Agreement." They further provided that Credit Suisse, as administrative agent, "shall not . . . have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to the Borrower [i.e., Meridian] or any of its affiliates that is communicated to or obtained by the Person serving as the First Lien Administrative Agent or any of its Affiliates in any capacity." In addition, the agreements provided: "[T]he . . . Administrative Agent [i.e., Credit Suisse] shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document."

Meridian declared bankruptcy less than one year after the agreements were signed and plaintiffs subsequently commenced this action alleging that Meridian's solvency was falsely represented, fraudulently inducing them (or their predecessors-in-interest) to sign the loan agreements. The specific allegations against Credit Suisse are that by jointly arranging the April 2004 refinancing, it aided and abetted Meridian's fraud and aided and abetted breaches of fiduciary duties. The complaint alleges that in March 2004, "Credit Suisse and Goldman Sachs approached the First and Second Lien Lenders on behalf of Meridian, including [p]laintiffs and/or their predecessors" and provided them with a "series of presentation materials for Meridian" that had been prepared by Credit Suisse and Goldman Sachs. It further alleges that "[t]he term sheet provided to prospective lenders, including [p]laintiffs and/or their predecessors, plainly stated that Meridian's solvency would be represented in the eventual credit agreements, despite the knowledge of the [d]efendants and Meridian that Meridian was already insolvent and would become more insolvent giving effect to the planned

massive payments to the Defendants with proceeds of the 2004 Refinancing."[2]

The complaint also alleges that Credit Suisse was aware that Meridian was insolvent. The complaint states that "Credit Suisse knew that Meridian had total liabilities of $700 million" and that Credit Suisse had valued Meridian at somewhere between $575 to $675 million. Based on that allegation, plaintiffs assert that Credit Suisse's own analysis of Meridian's value indicated that the company was insolvent, i.e., it owed $700 million and was only worth $575 million to $675 million. However, the complaint fails to set forth whether Credit Suisse accounted for Meridian's liabilities when determining its worth and assumes that it did not.

Additionally, the complaint alleges that Credit Suisse played a key role in arranging the 2004 refinancing and "did so despite its knowledge that Meridian was insolvent and that Meridian . . . was telling prospective lenders, including [p]laintiffs and/or their predecessors, that Meridian was solvent." It further alleges that Credit Suisse "did so despite its knowledge that Meridian's directors planned to breach their fiduciary duties by paying out amounts of the 2004 [r]efinancing proceeds to the Investor Defendants, thereby deepening the insolvency of an already insolvent company." Plaintiffs maintain that Credit Suisse was willing to provide its assistance in spite of Meridian's fraud and its board's breach of fiduciary duties because "[i]t stood to receive (and did receive) large fees."

The specific allegation in the complaint under the causes of action for aiding and abetting fraud, based "[u]pon information and belief," is that "Credit Suisse knowingly and intentionally provided substantial assistance to Meridian in committing its fraud by contacting prospective investors and distributing information about Meridian and the 2004 [r]efinancing, as well as by organizing the 2004 [r]efinancing in its capacities as Joint Arranger, First Lien Administrative Agent, First Lien Collateral Agent, and Joint Book Manager."

The investor defendants moved for dismissal of the complaint on the ground that it failed to state a cause of action. Thereafter, Credit Suisse moved for the same relief. The motions were granted. At issue on this appeal is the motion made by Credit Suisse.

---

2.  The complaint alleges that Meridian was "looted" based on a payout of $51,000,000 from the proceeds of the 2004 refinancing to the investor defendants, the institutional investors who allegedly controlled Meridian. However, the agreements provided that Meridian would use approximately $53,000,000 of the proceeds to repay principal and other amounts that it owed under certain subordinated notes.

In order to plead properly a claim for aiding and abetting fraud, the complaint must allege: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud" (*UniCredito Italiano SPA v JPMorgan Chase Bank*, 288 F Supp 2d 485, 502 [SD NY 2003] [internal quotation marks omitted], quoting *Gabriel Capital, L.P. v NatWest Fin., Inc.*, 94 F Supp 2d 491, 511 [SD NY 2000]). "[A]ctual knowledge of the fraud may be averred generally" (*In re Worldcom, Inc. Sec. Litig.*, 382 F Supp 2d 549, 560 [SD NY 2005] [internal quotation marks omitted]). Substantial assistance exists "where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated" (*UniCredito Italiano*, 288 F Supp 2d at 502 [internal quotation marks omitted], quoting *McDaniel v Bear Stearns & Co., Inc.*, 196 F Supp 2d 343, 352 [SD NY 2002]).

Here, plaintiffs have failed to plead an essential element of the claim—substantial assistance. Plaintiffs maintain, "upon information and belief," that Credit Suisse assisted in the fraud by contacting prospective investors and distributing information about Meridian, as well as by organizing the refinancing. However, the crux of plaintiffs' claim is that Credit Suisse assisted in the alleged fraud by failing to disclose Meridian's insolvency. This allegation is insufficient to support a claim of aiding and abetting fraud absent a fiduciary duty or some other independent duty owed by Credit Suisse to the plaintiffs (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553 [2009]; *King v Schonberg & Co.*, 233 AD2d 242 [1996]).

Furthermore, the agreement provided that Credit Suisse did not have a duty to disclose any information relating to Meridian and could not be held liable for the failure to disclose any information. Thus, the agreement itself bars plaintiffs' cause of action for aiding and abetting fraud based on allegations of silence or inaction (*see Jebran v LaSalle Bus. Credit, LLC*, 33 AD3d 424 [2006]).

Because the failure to plead substantial assistance is, by itself, a sufficient ground for dismissal of the complaint, we need not reach the issue of whether the complaint fails to allege adequately that Credit Suisse had actual knowledge of Meridian's alleged underlying fraud or whether the language contained in the agreements limiting Credit Suisse's liability preclude a claim of fraud or aiding and abetting fraud. Concur—Mazzarelli,

J.P., Buckley, McGuire and DeGrasse, JJ. [*See* 2008 NY Slip Op 31179(U).]