■ MARK D. WEINBERG, Appellant, v STEVEN MENDELOW, Defendant, and KONIGSBERG, WOLF & Co. et al., Respondents. [979 NYS2d 29]—

With respect to the fraud claim, the complaint adequately alleges, on its agency theory, that defendant Steven Mendelow's acts can be attributed to defendant Konigsberg, Wolf & Co. (KW), but not to defendant Paul Konigsberg (Konigsberg). It sufficiently pleads that Mendelow was KW's agent by alleging that KW held Mendelow out as a "principal," which was akin to a partner. "A legal entity [such as KW] . . . necessarily functions through human actors" such as Mendelow (*Prudential-Bache Sec. v Citibank*, 73 NY2d 263, 276 [1989]). "[T]he acts of agents [e.g. Mendelow], and the knowledge they acquire while acting within the scope of their authority[,] are presumptively imputed to their principals," such as KW (*Kirschner v KPMG LLP*, 15 NY3d 446, 465 [2010]). Contrary to Konigsberg's and KW's contention, Mendelow could not have been acting on behalf of FGLS Equity, LLC (a Bernard Madoff feeder fund), rather than KW, when he advised plaintiff to invest with Madoff in the summer of 2002, because FGLS was not formed until March 2003. The allegations that Mendelow was acting on behalf of Konigsberg, however, are conclusory (*see Perl v Smith Barney*, 230 AD2d 664, 665 [1st Dept 1996], *lv denied* 89 NY2d 803 [1996]).

In addition to agency, the complaint sufficiently pleads that KW—but, again, not Konigsberg—should be liable for Mendelow's acts under the doctrine of respondeat superior by alleging that KW—not Konigsberg personally—employed Mendelow (*see Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932 [1999]). The complaint alleges that Konigsberg is the sole owner of KW, but even the sole owner of a corporation is entitled to the presumption that he is separate from his corporation (*see East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 66 AD3d 122, 126 [2d Dept 2009], *affd* 16 NY3d 775 [2011]). Plaintiff does not contend that KW's corporate veil should be pierced to reach Konigsberg.

Konigsberg and KW contend that Mendelow was not acting within the scope of his employment when he advised plaintiff.

However, the allegations in the complaint are sufficient to withstand a motion to dismiss the respondeat superior claim (*see Riviello v Waldron*, 47 NY2d 297, 303 [1979]; *Burns v City of New York*, 6 AD2d 30, 33, 35, 37 [1st Dept 1958]).

Even if Konigsberg is not liable on an agency theory, he is on the pleaded conspiracy theory. The complaint sufficiently pleads that both Konigsberg and KW should be liable for Mendelow's fraud because all three defendants conspired to defraud plaintiff (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968 [1986]). The complaint expressly alleges "a corrupt agreement" among all three defendants, their "intentional participation in the furtherance of the plan or purpose," and "resulting damages or injury" (*Williams v Sidley Austin Brown & Wood, L.L.P.*, 13 Misc 3d 1213[A], 2006 NY Slip Op 51810[U], *3 [Sup Ct, NY County 2006], *affd* 38 AD3d 219 [1st Dept 2007]). As for the "overt act in furtherance of the agreement, which constitutes an independent tort or wrongful act" (*id.*), the complaint alleges that KW made misrepresentations in the form of the monthly account statements it sent to plaintiff. It is not necessary that the complaint allege an overt act by Konigsberg (*see Kuo Feng Corp. v Ma*, 248 AD2d 168 [1st Dept 1998], *appeal dismissed* 92 NY2d 845 [1998], *lv denied* 92 NY2d 809 [1998]).

The complaint sufficiently pleads a cause of action for negligent retention against KW by alleging that Mendelow had been a principal of KW since 1982, that Konigsberg was KW's president, that Mendelow was sanctioned by the Securities and Exchange Commission (SEC) in 1993 for Madoff-related fraud, and that Konigsberg "looked the other way with respect to Mendelow being sanctioned by the SEC" (*see Sheila C. v Povich*, 11 AD3d 120, 129-130 [1st Dept 2004]). Konigsberg's knowledge of the SEC sanction can be imputed to KW because Konigsberg was its president (*see Kirschner*, 15 NY3d at 465). At this stage of the proceedings, we also find that these factual allegations support a claim for negligent supervision.

Originally, the fifth cause of action alleged that all three defendants aided and abetted Madoff's fraud and that Konigsberg and KW aided and abetted Mendelow's fraud on plaintiff. On appeal, plaintiff presses only the latter point. Since we find that Konigsberg and KW can be sued for fraud, the aiding and abetting claim appears to be unnecessary; nevertheless, plaintiff may plead alternate causes of action (*see* CPLR 3014).

The complaint sufficiently pleads that Konigsberg and KW aided and abetted Mendelow's fraud (*see Oster v Kirschner*, 77 AD3d 51, 55 [1st Dept 2010]; *see also Stanfield Offshore Leveraged Assets, Ltd. v Metropolitan Life Ins. Co.*, 64 AD3d 472, 476

[1st Dept 2009], *lv denied* 13 NY3d 709 [2009]). Contrary to their contention that the complaint does not allege actual knowledge of the fraud, the complaint alleges that "Konigsberg knew, or certainly should have known, that KW and Mendelow fraudulently induced Plaintiff's investments" and that KW "knew that [the monthly] statements [for FGLS, which Mendelow and KW forwarded to plaintiff,] were false." Contrary to their contention that the complaint does not allege that Konigsberg and KW rendered substantial assistance in the achievement of the fraud, the complaint alleges that plaintiff relied on the representations on KW's website about Mendelow's qualifications when deciding to invest in FGLS. It also alleges that, at Mendelow's and Konigsberg's direction, KW (FGLS's accountant) ignored irregularities in FGLS's books and records; that, if KW had reviewed such books and records, it would have discovered Madoff's fraud; and that plaintiff "would have redeemed his investment [in FGLS] if Defendants had informed him of the numerous warning signs of [Madoff's] fraud." Concur—Mazzarelli, J.P., Friedman, DeGrasse, Richter and Manzanet-Daniels, JJ.