■ DONNA M. MCBRIDE, Individually and Derivatively on Behalf of BEACON ASSOCIATES LLC II, Appellant, v KPMG INTERNATIONAL et al., Respondents, et al., Defendants. JAY WEXLER, Individually and Derivatively on Behalf of RYE SELECT BROAD MARKET PRIME FUND, L.P., Appellant, v KPMG LLP, et al., Defendants, and KPMG UK et al., Respondents. DANIEL RYAN et al., Appellants, v FRIEHLING & HOROWITZ, P.C., et al., Defendants, and KPMG UK et al., Respondents. MATTHEW GREENBERG et al., Appellants, v FRIEHLING & HOROWITZ, P.C., et al., Defendants, and KPMG UK et al., Respondents. [24 NYS3d 257]—

Judgment, Supreme Court, New York County (Richard B. Lowe, III, J.), entered September 5, 2014, dismissing plaintiff Donna M. McBride's complaint as against Paul Konigsberg, KPMG UK, and KPMG International, unanimously affirmed without costs. Judgment, same court and Justice, entered September 5, 2014, dismissing plaintiff Jay Wexler's first amended complaint as against Konigsberg, KPMG UK, and

KPMG International, unanimously affirmed, without costs. Judgment, same court and Justice, entered September 5, 2014, dismissing the Ryan plaintiffs' first amended complaint against Konigsberg, KPMG UK, KPMG International, and Frank Avellino, unanimously affirmed, without costs. Judgment, same court and Justice, entered September 5, 2014, dismissing the Greenberg plaintiffs' complaint against Konigsberg, KPMG UK, and KPMG International, unanimously affirmed, without costs. Order, same court and Justice, entered on or about August 18, 2014, which, insofar as appealed from as limited by the briefs, granted defendants JP Morgan Chase & Co. and The Bank of New York Mellon's (BNY) motions to dismiss the claims for (1) aiding and abetting fraud, fraud in the inducement, and breach of fiduciary duty, (2) conversion, and (3) unjust enrichment, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered on or about July 28, 2014, unanimously dismissed, without costs, as subsumed in the appeals from the judgments.

The motion court correctly found that New York lacks personal jurisdiction over KPMG UK pursuant to CPLR 302 (a) (3) (ii). While plaintiffs allege that KPMG UK committed a tort outside the state (negligently auditing nonparty Madoff Securities International, Ltd. [MSIL] in the United Kingdom), and their causes of action arise out of that tort, KPMG UK's act did not cause injury to a person or property within the state. "[T]he situs of commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred" (*CRT Invs., Ltd. v BDO Seidman, LLP*, 85 AD3d 470, 471-472 [1st Dept 2011]).

The court providently exercised its discretion in denying plaintiffs' request for jurisdictional discovery since plaintiffs failed to submit affidavits specifying facts that might exist but could not then be stated that would support the exercise of personal jurisdiction over KPMG UK (CPLR 3211 [d]; *see de Capriles v Lugo*, 293 AD2d 405, 406 [1st Dept 2002], *lv dismissed in part, denied in part* 98 NY2d 717 [2002]).

Plaintiffs base their claims against KPMG International on the contention that KPMG International is vicariously liable for KPMG UK'S alleged misconduct. However, plaintiffs' allegations, even if true, would not establish a basis for imposing vicarious liability on KPMG International for KPMG UK'S acts, either on a theory that an actual principal-agent relationship existed or on a theory of apparent authority. Accordingly, the claims against KPMG International were correctly dismissed.

In April 2014, the court dismissed Wexler's claim against the Tremont defendants for fraudulently inducing him into investing in nominal defendant/derivative plaintiff Rye Select Broad Market Prime Fund L.P. Wexler appealed but withdrew his appeal with prejudice. Without an underlying fraudulent inducement claim, Wexler's claim that JPMorgan, BNY, and Konigsberg aided and abetted fraudulent inducement necessarily fails (*see Kleinerman v 245 E. 87 Tenants Corp.*, 74 AD3d 448, 449 [1st Dept 2010]).

Like Wexler, McBride invested in a feeder fund. She became a member of nominal defendant/derivative plaintiff Beacon Associates LLC II (Beacon Fund), which is managed by defendant Beacon Associates Management Corp. (Beacon Associates). Beacon Associates "invested" most of the Beacon Fund's assets with nonparty Bernard L. Madoff Investment Securities LLC (BMIS). McBride alleges that Beacon Associates fraudulently induced her into becoming a member of the Beacon Fund by, for example, failing to disclose that the Beacon Fund's assets would be invested with BMIS. She alleges that JPMorgan, BNY, and Konigsberg aided and abetted Beacon Associates in this fraudulent inducement. However, McBride makes only conclusory allegations that the aiders and abettors knew about and substantially assisted Beacon Associates' fraud; all of her specific allegations deal with aiding and abetting *Madoff's/BMIS's* fraud. Hence, her aiding and abetting claim fails (*see CRT Invs., Ltd. v Merkin*, 29 Misc 3d 1218[A], 2010 NY Slip Op 51868[U], *15 [Sup Ct, NY County 2010], *affd* 85 AD3d 470 [1st Dept 2011]).

The Ryans and the Greenbergs did not invest in feeder funds; they invested directly in BMIS. Their claim that Konigsberg and BNY aided and abetted the fraud of BMIS insiders Frank DiPascali and Annette Bongiorno fails for lack of allegations of substantial assistance by the alleged aiders and abettors (*see Stanfield Offshore Leveraged Assets, Ltd. v Metropolitan Life Ins. Co.*, 64 AD3d 472, 476 [1st Dept 2009], *lv denied* 13 NY3d 709 [2009]). The Ryans and the Greenbergs allege that Konigsberg's firm, nonparty Konigsberg Wolf & Co., P.C. (KWC), "signed off" on Madoff's family investment books, which substantially assisted the continuation of the BMIS fraud. However, they fail to show why KWC's corporate veil should be pierced to reach Konigsberg (*see Weinberg v Mendelow*, 113 AD3d 485 [1st Dept 2014]). In any event, they do not explain how signing off on accounting statements for entities other than BMIS substantially assisted BMIS's fraud. For example, they do not allege that, when they decided to invest in BMIS,

they relied on the fact that Madoff's family investment books were in order (*see National Westminster Bank v Weksel*, 124 AD2d 144, 149 [1st Dept 1987], *lv denied* 70 NY2d 604 [1987]; *see Stanfield*, 64 AD3d at 476).

BMIS had both a fraudulent side (the investment advisory side) and a legitimate side (the proprietary trading and market making side). BMIS maintained an account for its brokerage business (i.e., the legitimate business) with BNY and an account for its fraudulent business with JPMorgan. Madoff moved funds from BMIS's account at JPMorgan to MSIL's bank account in London to BMIS's account at BNY; he then removed funds from the BNY account. The Ryans and the Greenbergs allege that BNY provided substantial assistance to the BMIS fraud by allowing Madoff to transfer funds between the BNY account and London. However, substantial assistance "means more than just performing routine business services for the alleged fraudster" (*CRT*, 85 AD3d at 472). A bank's allowing its customer to transfer money from its account is a routine business service (*see MLSMK Inv. Co. v JP Morgan Chase & Co.*, 431 Fed Appx 17, 20 [2d Cir 2011]).

The Ryans and the Greenbergs allege that, as BMIS officers, Peter Madoff, Mark Madoff, Andrew Madoff, DiPascali, and Bongiorno (the individual BMIS defendants) owed fiduciary duties to BMIS investors. They further allege that BNY and Konigsberg aided and abetted the individual BMIS defendants' breach of fiduciary duty. The Ryans additionally allege that Avellino aided and abetted the individual BMIS defendants' breach of fiduciary duty.

The claims against BNY and Konigsberg for aiding and abetting breach of fiduciary duty fail for the same reason the claims against them for aiding and abetting fraud fail, i.e., for lack of allegations of substantial assistance (*see Kaufman v Cohen*, 307 AD3d 113, 126 [1st Dept 2003]).

The Ryans' claim against Avellino for aiding and abetting fiduciary duty fails because there was no underlying breach of fiduciary duty (*see OFSI Fund II, LLC v Canadian Imperial Bank of Commerce*, 82 AD3d 537, 540 [1st Dept 2011], *lv denied* 17 NY3d 702 [2011]). While officers of a corporation owe fiduciary duties to the *corporation* (*see e.g. Limmer v Medallion Group*, 75 AD2d 299, 303 [1st Dept 1980]), the Ryans cite no authority for the proposition that a corporation's officers owe fiduciary duties to people who give the corporation money to invest.

In its April 2014 order, the court found that Wexler's claims for conversion and unjust enrichment were derivative, not

direct. As noted, Wexler appealed from this order but withdrew his appeal. Hence, he may not relitigate the nature of those claims (*see generally Buechel v Bain*, 97 NY2d 295, 303 [2001], *cert denied* 535 US 1096 [2002]).

Even if McBride's claims for conversion and unjust enrichment are direct, they nonetheless fail to state a cause of action, as do the Ryans' and the Greenbergs' claims. Where, as here, a plaintiff alleges that a defendant converted money, the money "must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner" (*Republic of Haiti v Duvalier*, 211 AD2d 379, 384 [1st Dept 1995]). McBride sent her money to Beacon Associates, which sent it to Madoff, who deposited it at JPMorgan. Even if, arguendo, McBride's money was specifically identifiable when she sent it to Beacon Associates, there is no indication that Beacon Associates segregated it when it sent investors' money to Madoff. By the time Madoff deposited investors' money at JPMorgan, McBride's investments would not have been specifically identifiable. The Ryans and the Greenbergs assert conversion claims against BNY, not JPMorgan. JPMorgan sent money to MSIL in London; in turn, MSIL sent money to BNY. By the time BNY got the money, the Ryans' and the Greenbergs' investments would not have been specifically identifiable.

Even if, arguendo, plaintiffs' money were specifically identifiable, their conversion claims would fail because they had no possessory right or interest in the allegedly converted property (*see Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006]). Plaintiffs had no possessory right or interest in BMIS's accounts at JPMorgan and BNY; rather, *BMIS* had the right and interest in those accounts (*see Calisch Assoc. v Manufacturers Hanover Trust Co.*, 151 AD2d 446, 448 [1st Dept 1989]).

In support of their unjust enrichment claims, McBride fails to allege a "sufficiently close relationship" with JPMorgan, and the Ryans and the Greenbergs fail to allege a "sufficiently close relationship" with BNY (*see Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 [2012]).

The Ryans' claim against Avellino for negligent misrepresentation was correctly dismissed for the simple reason that it fails to allege that Avellino made any misrepresentation (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 46 AD3d 400, 402 [1st Dept 2007], *affd* 12 NY3d 553 [2009]).

The court providently exercised its discretion in denying plaintiffs leave to amend since plaintiffs failed to submit "appropriate substantiation" (*see Guzman v Mike's Pipe Yard*, 35

AD3d 266, 266 [1st Dept 2006] [internal quotation marks omitted]). Even before the amendment to CPLR 3025 (b) took effect on January 1, 2012, we required a "proposed pleading accompanied by an affidavit of merit" (*see Fletcher v Boies, Schiller & Flexner, LLP*, 75 AD3d 469, 470 [1st Dept 2010]).

We have considered plaintiffs' remaining arguments (for example, that the court should have taken judicial notice of certain developments) and find them unavailing. Concur—Tom, J.P., Friedman, Saxe and Kapnick, JJ.