Family Health Mgt., LLC v Rohan Devs., LLC (2022 NY Slip Op 03796)

Family Health Mgt., LLC v Rohan Devs., LLC

2022 NY Slip Op 03796

Decided on June 09, 2022

Appellate Division, First Department

RODRIGUEZ, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 09, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick
Tanya R. Kennedy Saliann Scarpulla Julio Rodriguez III John R. Higgitt

Index No. 156905/19, 595797/19 Appeal No. 15351 Case No. 2021-02510 

[*1]Family Health Management, LLC, et al., Plaintiffs-Respondents,
v
Rohan Developments, LLC, Defendant-Appellant.
Rohan Developments, LLC, Third-Party Plaintiff-Appellant,
v
K. Zark Medical, P.C., et al., Third-Party Defendants-Respondents.

Defendant appeals from the judgment of the Supreme Court, New York County (Barbara Jaffe, J.), entered February 5, 2021, in favor of plaintiffs and against defendant.

Graff Law Offices, New York (Michael P. Graff of counsel), for appellant.
The Law Offices of Kenneth L. Kutner, New York (Kenneth L. Kutner of counsel), for respondents.

RODRIGUEZ, J.

At issue on this appeal is whether Supreme Court properly granted plaintiffs' motion for summary judgment on their conversion claim. Since the funds at issue were paid to defendant in contemplation of a lease that never became effective, summary judgment was properly granted, as discussed below.
Contrary to defendant's contention, it did not have a right to the $96,000 at issue, because the lease was never "signed and delivered by both Landlord and Tenant," as required for it to bind the parties. None of the versions of the lease in the record are signed by plaintiffs. The fact that various exhibits to the lease were signed by plaintiffs or its guarantors is of no moment. Communications suggesting that plaintiffs had signed or would sign the lease do not change the fact that no signed lease was ever delivered (see Hamilton v Croman, 2015 NY Slip Op 32525[U], *8-9 [Sup Ct, NY County 2015]; see also 219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506, 512 [1979]); nor did plaintiffs ever receive keys, take possession of the premises, or pay rent (see 709 Rte. 52, Inc. v DelCastillo, 27 Misc 3d 127[A], 2010 NY Slip Op 50581[U], *1-2 [App Term, 2d Dept 2010]). Although defendant eventually signed and delivered the lease, both parties' signatures were required for the lease to be binding.
It is clear as a matter of law that the signing and delivery requirement was not waived or otherwise ineffective, because that requirement was a condition precedent to the formation of a binding lease agreement (see Felipe v 2820 W. 36th St. Realty Corp., 20 AD3d 503, 504 [2d Dept 2005]; Brois v DeLuca, 154 AD2d 417, 418 [2d Dept 1989]). Moreover, "[w]hen parties do not intend to be bound until their agreement is reduced to writing and signed, there is no contract in the interim even if the parties have orally agreed upon all the terms," and the doctrines of promissory estoppel, equitable estoppel, and part performance are not effective (see Funk v Seligson, Rothman & Rothman, Esqs., 165 AD3d 429, 430 [1st Dept 2018] [internal quotation marks omitted]). Even an executed oral modification could not have been effective, because there was no underlying written agreement to modify (see Brois, 154 AD2d at 418).
Moreover, a review of the applicable law demonstrates that plaintiffs established the elements of their conversion claim. Conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49—50 [2006]).
"It is well settled [*2]that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question" (Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113, 124 [1st Dept 1990], lv denied 77 NY2d 803 [1991]; see Thys v Fortis Sec. LLC, 74 AD3d 546, 547 [1st Dept 2010]; Republic of Haiti v Duvalier, 211 AD2d 379, 384 [1st Dept 1995]). "Although the action must be for recovery of a particular and definite sum of money, the specific bills need not be identified" (Thys, 74 AD3d at 547; see Gordon v Hostetter, 37 NY 99, 103 [1867]).
Thus, the first and main issue before this Court is whether the $96,000 is a "specific, identifiable fund" (Manufacturers Hanover Trust Co., 160 AD2d at 124). As a specific amount is conceded by defendant and represented by plaintiffs' check, this Court finds that the funds at issue are specifically identifiable.
The rules gleaned from Manufacturers Hanover Trust Co. and Thys, that "[m]oney, specifically identifiable and segregated, can be the subject of a conversion action" (Manufacturers Hanover Trust Co., 160 AD2d at 124) and that although an action for conversion of money "must be for recovery of a particular and definite sum of money, the specific bills need not be identified" (Thys, 74 AD3d at 547), can both be traced to a Court of Appeals decision from 1867, Gordon v Hostetter (37 NY 99 [1867], supra) (see Manufacturers Hanover Trust Co., 160 AD2d at 124, citing Payne v White, 101 AD2d 975, 976 [3d Dept 1984], citing Marine Midland Bank v Russo Produce Co., 65 AD2d 950, 951 [4th Dept 1978], mod 50 NY2d 31 [1980], citing Gordon; Thys, 74 AD3d at 547, citing Jones v McHugh, 37 AD2d 878, 879 [3d Dept 1971], citing Gordon). The underlying principles of Gordon, and the case law derived from it, are instructive to our analysis here.
In Gordon, which involved an action to recover damages for the conversion of embezzled money, the defendant undisputedly stole "eighty-five or ninety dollars" from the plaintiffs, who were his employers (37 NY at 100). The jury rendered a verdict in favor of the plaintiffs. After reserving the case for further consideration, however, the trial court held, inter alia, "[t]hat the action, being in the nature of trover, could not be maintained without proof that certain specific property had been converted by the defendant" and that the plaintiffs "had failed to prove the conversion of any particular money, except the fifteen dollars in gold," which was the only money of which the plaintiffs "could speak with certainty" (id. at 100-101). The trial court held that even though the defendant conceded to the amount taken, he was not responsible for it because the plaintiffs were unable to distinguish what was taken from other like coins and bills, making the stolen funds unidentifiable to the defendant (id. at 101-102). The judgment was affirmed on intermediate appeal, and the Court of Appeals [*3]reversed, directing final judgment for the plaintiffs on the original verdict (id. at 104).
The Court of Appeals observed that under the trial court's ruling, "a party appropriating [money] wrongfully would ordinarily be secure of immunity" (id. at 102). Noting that "[n]o one, in the practical affairs of life, retains a specific description of each bill which comes to his hands," the Court stated that "[i]f the fact of the unlawful taking be established, and the amount converted is ascertained, the culprit cannot avail himself of his own act, in secreting or destroying the bills, as a protection against . . . prosecution" (id.), and as the defendant had admitted the unlawful taking and the amount was conceded, "there was no occasion to prove the particulars, in which the coin and bills in question differed from all others of like denomination" (id.). The Court thus held that where the defendant admitted that the money that he took was plaintiffs' money and conceded to the amount taken, "[t]he money was identified so far as was needful to determine the rights of the parties; and the plaintiffs were bound to go no further" (id.).
In its analysis, the Court discussed its prior decision in an action for replevin of bank bills that were not "so described" in the pleadings but corresponded in amount with the money withheld (id. at 102-103). Citing with approval the earlier Court's answer to the defendant's objection that the action would not lie without further identification of the bills, the Court in Gordon affirmed that "'[a]ll that is necessary is[] that the proof should be sufficient to enable the court to give judgment for the delivery of the particular thing to which the plaintiff is entitled; and if . . . delivery cannot be made . . . then the value is to be collected'" (id. at 102-103, quoting Graves v Dudley, 20 NY 76, 80 [1859]).
Further, the Gordon opinion discussed an earlier case from the Court of Exchequer Chamber where the defendant argued that the action for trover would not lie for money out of a bag, which could not be identified (id. at 103). In that case, it was stated that "this action lies as well for money out of a bag as of corn which cannot be known" (id.). The Gordon Court confirmed that "[t]he doctrine of this case has since been accepted as settled law; and trover has been repeatedly held to lie for the conversion of determinate sums, though the specific coin and bills were not identified" (id.).
Although trover is the cause of action at issue in Gordon, over time, "[t]rover gave way slowly to the tort of conversion," and "[t]he technical differences between trover and conversion eventually disappeared" (Thyroff v Nationwide Mut. Ins. Co., 8 NY3d 283, 288 [2007]; see Restatement [Second] of Torts § 222A, Comment a ["The modern action for the tort called conversion is descended from the old common law action of trover"]).
Turning to more recent case law from this Department, in Manufacturers Hanover Trust Co., the plaintiff [*4]made a transfer to the defendant of $223,280.74, which, in turn, the defendant credited to the wrong account, a checking account in overdraft status (160 AD2d at 115-118). The defendant, in its motion papers, argued that the deposit was withdrawn and used by the holder of the account, "as if the account balance was positive, reduced to zero or below, and then replenished from day to day" even though the account was in overdraft status (id. at 119 [internal quotation marks omitted]). On appeal, the defendant asserted that there was "continuous depositing and withdrawing of the money," that the account was "tremendously active," and that "funds were deposited each day to cover checks presented for payment that day" (id. at 119-120 [internal quotation marks omitted]). Rejecting these arguments, this Court noted that "[n]o amount of rhetorical flourish can alter [the] inescapable fact" that defendant's mistaken transfer never left their hands and "merely reduced the amount of the final negative balance" in the account at issue (id. at 120). Although the account at issue remained in overdraft status at all relevant times, the record established that the overdraft amount fluctuated, suggesting that multiple deposits and withdrawals indeed occurred subsequent to the deposit of the plaintiff's funds (id. at 119, 122).
In holding that the defendant could be sued by the plaintiff in conversion, this Court observed that the plaintiff "effected a wire transfer to [the defendant] of a specific sum, $223,280.74, to be credited to a specific account and, by doing so, created an obligation on [the defendant's] part either to treat the transfer in the specified manner or return the funds" (id. at 125). This Court, although it did not explicitly say so, ostensibly found that the wire transfer of $223,280.74 constituted a "specifically identifiable" fund (see id. at 124). This Court's analysis of whether the funds were "specifically identifiable" did not turn on the nature of the account that received the funds (i.e., segregated or unsegregated), but instead on whether the money at issue was a specific sum (id. at 125). We further held that since the defendant did not satisfy its obligation "either to treat the transfer in the specified manner or return the funds," it could be sued by plaintiff in conversion (id. at 125).
In Republic of Haiti v Duvalier (211 AD2d 379 [1st Dept 1995]), this Court held that Haiti established a prima facie case as to defendant's liability for conversion of Haitian state funds and remanded for an assessment of the total amount of state funds possessed by Duvalier. This Court found, inter alia, that Haiti demonstrated that funds from its national defense account were used to open the personal bank account at issue, deposits were traceable to Haitian government checks, over $5 million in cash was deposited by Duvalier's friends and relatives, and the amount in the account exceeded Duvalier's known sources of legitimate income (id. at 384[*5]-385). Of note, it is unclear from the opinion whether the whole of the funds in Duvalier's account were traceable to Haiti or if the funds at issue were commingled with other, legitimately held funds.
We found that the "combination of direct and circumstantial evidence" present in the case was sufficient to establish Haiti's prima facie conversion claim (id. at 385). Noting that this was a case "where fraud or illegality is likely to be involved," to be judged "with a common sense view to the realities of normal life," we reasoned that "movements of large sums of cash, otherwise unexplained and unaccounted for, are usually presumed to be proceeds of illegal transactions, especially where, as here, they are combined with evidence of an illegal course of conduct" (id. at 385-386 [internal quotation marks omitted]).
In Thys (74 AD3d 546), another decision from this Court involving an action for conversion of money, the plaintiff sent $192,000 to the defendants—money that the defendants had previously deposited in the plaintiff's bank account—for the purpose of correctly recalculating and repaying the bonus due to the plaintiff. This Court held that the $192,000 at issue, funds that were represented by the plaintiff's check, were "specifically identifiable," constituting a "particular and definite sum of money," and, in turn, satisfying the first element of an action for conversion of money (id.). As in Republic of Haiti, there is no indication whether the sum at issue was or was not commingled with other funds in the defendants' account.
Additionally, this Court found that the specified funds "were entrusted to [the defendants'] custody only for a particular purpose," namely, the recalculation and repayment of the plaintiff's bonus, that the funds were "subject to an obligation to be returned or to be otherwise treated in a particular manner" (id. [internal quotation marks omitted]), and that the allegations stated a cause of action for conversion, reversing the motion court's order, which granted the defendants' motion to dismiss.
In McBride v KPMG Intl. (135 AD3d 576 [1st Dept 2016]), the plaintiffs attempted to recover from investment funds and financial institutions that had held accounts connected to the Bernie Madoff Ponzi scheme. Because layers of transactions and deposits were involved, this Court held that the plaintiffs' money was not "specifically identifiable" relative to the defendants from which recovery was sought (id.).[FN1] Ultimately, in McBride, this Court's analysis of whether the funds were "specifically identifiable" appears to have been informed by a number of factors, including whether the money was segregated, the number of transfers involved (or the degree of separation from the plaintiff seeking recovery), and whether the defendant from which recovery was sought was implicated in the bad acts alleged.
In SH575 Holdings, LLC v Reliable Abstract Co., L.L.C. (195 AD3d 429 [1st Dept 2021]), the plaintiff sought to recover $[*6]1 million that it transferred to a bankruptcy lawyer's IOLA account in connection with its purchase of real property, which the lawyer, as part of his Ponzi scheme, subsequently transferred to other defendants. Affirming the motion court's dismissal of the conversion claims, this Court found that because the IOLA account was an unsegregated account, the plaintiff's funds, upon transfer, became commingled with funds that were already in the IOLA account, rendering them no longer specifically identifiable (id. at 430). Further, this Court found that even if the funds were specifically identifiable, the plaintiff still failed to plead a claim because it did not make a demand for return of the money from the defendant (id. at 430-431). In finding that the funds were not specifically identifiable, this Court's reasoning turned on the nature of the account that received the funds—specifically, an IOLA account as an unsegregated account—and not on whether the funds at issue constituted a specific sum.
In Grocery Delivery E-Servs. USA, Inc. v Flynn (201 AD3d 585 [1st Dept 2022]), a recent decision from this Court, we affirmed the motion court's denial of the defendant's motion to dismiss the complaint, finding, inter alia, that the complaint stated a cause of action for conversion. The funds at issue in Grocery Delivery were insurance proceeds paid by an insurance company to nonparty Mariner Seafood for the purpose of repaying the plaintiff for their losses incurred during a product recall. Nonparty Mariner, however, never remitted the payment to the plaintiff (id. at 586). This Court held that "[t]he commingling of the fund with Mariner's general corporate accounts does not render the conversion claim insufficient, because it was defendant and Mariner who commingled the funds" (id. at 587). Thus, we found that even though the funds at issue were commingled with other funds in an account, the funds nevertheless constituted a "specific, identifiable fund," and the plaintiff sufficiently pleaded a cause of action for conversion (id. at 586). We also found that the complaint sufficiently pleaded that Mariner had an obligation to turn over the fund received from the insurance company to the plaintiff (id.).
Our opinion in Grocery Delivery cites to a Second Department case, Petrone v Davidoff Hutcher & Citron, LLP (150 AD3d 776 [2d Dept 2017]), to support the conclusion that the commingling of the funds did not render the conversion claim insufficient (Grocery Delivery, 201 AD3d at 587). In doing so, the Grocery Delivery opinion seemingly both gives approval for the holding in Petrone, which, contrary to our holding in SH575 Holdings, found that money commingled in an attorney's escrow account did not preclude a cause of action for conversion, and suggests that the defendant's conduct is a factor to consider in analyzing the sufficiency of conversion claims.
As a review of the above cases demonstrates, when the funds at issue in an action for the conversion [*7]of money constitute a "specific sum," one that is "determinate," and reflects an "ascertained" amount, the money is "specifically identifiable" (Manufacturers, 160 AD2d at 124-125; Gordon, 37 NY at 102-103).
Viewed against that backdrop, we turn to the funds at issue here. Plaintiffs transferred $96,000 to their attorney's IOLA account, and their attorney subsequently issued a check directly to defendant. As the $96,000 constitutes a specific sum, an amount represented by plaintiffs' check and conceded by defendant, we find that the funds at issue are specifically identifiable (see also Lenczycki v Shearson Lehman Hutton, 238 AD2d 248, 248 [1st Dept 1997], lv dismissed in part, denied in part 91 NY3d 918 [1998]; Petrone, 150 AD3d at 777-778; Simpson & Simpson, PLLC v Lippes Mathias Wexler Friedman LLP, 130 AD3d 1543, 1544 [4th Dept 2015] ["With respect to the cause of action for conversion, we agree with plaintiff that the court erred in determining that the commingling of the embezzled funds in the employee's joint checking account precluded a cause of action for conversion"]; LoPresti v Terwilliger, 126 F3d 34, 42 [2d Cir 1997] ["The fact that the employees' Union dues were not segregated, but instead placed in the Company's general account[,] does not mean that those monies are not a 'specific identifiable thing' for purposes of imposing liability for conversion"]; cf. SH575 Holdings, 195 AD3d at 430).
As Gordon illustrates, the "specifically identifiable" element of an action for the conversion of money seeks to ensure not that "a specific description of each bill" is proved but that the "amount converted is ascertained" (37 NY at 102). Here, the parties do not dispute that plaintiffs sent defendant $96,000 or that defendant retained the $96,000; therefore, "[t]he money was identified so far as was needful to determine the right of the parties" (id.).
As in Thys, where the funds, which we found to be "specifically identifiable," were represented by the plaintiff's check for $192,000, here, the funds at issue are represented by plaintiffs' check for $96,000. Similarly, as in Manufacturers, where the plaintiff effected a wire transfer of a specific sum, $223,380.74, here, plaintiffs sent defendant a specific sum, $96,000. The amount of money transferred to defendant and defendant's retention of it are facts that are uncontested by the parties.
McBride is distinguishable as it involved a Ponzi scheme where the plaintiffs' investments were found to no longer be specifically identifiable relative to the defendants from which recovery was sought following several transfers, fraud was present, and there was no indication that the funds were specifically identifiable at each level of the investment pyramid. In McBride, this Court did not analyze whether the plaintiffs' funds were specifically identifiable upon their initial transfer into the set of investment firms and financial institutions but, instead, focused on whether the funds were specifically [*8]identifiable after multiple transfers were performed.[FN2]
Here, in contrast to McBride, plaintiffs transferred a specific sum, $96,000, to their attorney's IOLA account, which, in turn, their attorney sent to defendant via check. The limited transfers—which essentially amount to one transfer from plaintiffs (by their agent) to defendant—did not render the funds at issue no longer specifically identifiable.
Thus, we now clarify that our prior decision in SH575 Holdings, which found that funds were not specifically identifiable by virtue of being transferred into the IOLA account of an attorney involved in a Ponzi scheme, should not be read to preclude a cause of action for conversion when funds at issue have been commingled to any extent. Here, notwithstanding the funds' transmission through plaintiffs' attorney's IOLA account, the funds' temporary presence in that account did not constitute commingling under any measure pertinent to this cause of action. While the funds were in plaintiffs' attorneys' IOLA account, they remained plaintiffs' funds. Consequently, this conclusion is not at odds with this Court's holding in SH575 Holdings.
Our holding here, that the $96,000 is "specifically identifiable," is aligned with the principles underlying Gordon and case law derived from it, which stands for the proposition that conversion will lie, where, as here, there is a specific sum of money, even though the specific bills are not identified.
The next issue before this Court is whether plaintiffs, in sending the money to defendant, created "an obligation [on defendant's part] to return or otherwise treat in a particular manner the specific fund in question" (Manufacturers Hanover Trust Co., 160 AD2d at 124-125 [finding the funds at issue were subject to an obligation to be returned or treated in a particular manner where plaintiff effected a wire transfer to be credited to a specific account]; see Thys, 74 AD3d at 547 [finding same where plaintiff sent money to defendant for "the purpose of recalculating and repaying the bonus due to" him, which defendant failed to do]).
Here, the record reflects that the $96,000 payment was made in contemplation of the prospective lease, i.e., $24,000 for two months of security and $72,000 for six months of advance rent. Since, as noted, the lease was invalid because it was never fully executed, plaintiffs are entitled to return of the whole sum. Therefore, Supreme Court properly granted summary judgment on the conversion claim.
The dismissal of defendant's counterclaim and third-party complaint was also proper because, in the absence of a valid lease, there can be no claim for unpaid rent.
We have considered defendant's remaining arguments and find them unavailing.
With respect to our dissenting colleagues' writing, because we conclude that summary judgment was properly granted to plaintiffs on their conversion claim, we need not address the issue of whether plaintiffs were entitled to summary judgment on their unjust [*9]enrichment claim, an issue that the parties have not addressed in their briefs.
Accordingly, the judgment of the Supreme Court, New York County (Barbara Jaffe, J.), entered February 5, 2021, in favor of plaintiffs and against defendant, should be affirmed, without costs.
All concur except Kennedy and Scarpulla JJ. who dissent in an Opinion by Scarpulla J.:

SCARPULLA, J. (dissenting)

I respectfully disagree with the majority that Supreme Court properly granted summary judgment on the conversion claim in favor of plaintiffs. I would instead find that plaintiffs were entitled to summary judgment on their claim of unjust enrichment.
As an initial matter, I agree with the majority that defendant landlord did not have a right to the $96,000 that plaintiff tenant paid to it in contemplation of a lease because the lease was never "signed and delivered by both Landlord and Tenant," as required for it to bind the parties.
However, I disagree with the majority's conclusion that plaintiffs are entitled to recover the $96,000 on the conversion claim. Conversion occurs "where 'one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner'" Dragons 516 Ltd. v GDC 138 E 50 LLC, 201 AD3d 463, 464 [1st Dept 2022]; see also Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]). Although money can be the subject of a conversion claim, it must be "specifically identifiable and segregated" (Manufacturers Hanover Trust Co. v Chemical Bank, 160 AD2d 113, 124 [1st Dept 1990], lv denied 77 NY2d 803 [1991]; see also McBride v KPMG Intl., 135 AD3d 576, 580 [1st Dept 2016]).
Here, plaintiff tenant transferred the $96,000 to its attorney's IOLA account, and the attorney subsequently issued a check for these funds directly to defendant's general account. Because the IOLA account was unsegregated, plaintiff's funds, once transferred into the account, became commingled with the other monies in the account, rendering the $96,000 no longer "specifically identifiable" (SH575 Holdings LLC v Reliable Abstract Co., L.L.C., 195 AD3d 429, 430 [1st Dept 2021] citing McBride, 135 AD3d at 580).[FN3] This proposition stands despite the majority's lengthy recitation of the law of conversion and the cases it cites, many of which are factually distinguishable.[FN4] Consequently, I believe that plaintiffs failed to establish that the funds in this case were "specifically identifiable" and that therefore summary judgment should not have been granted on the conversion cause of action.
Supreme Court stated that plaintiffs' unjust enrichment claim need not be addressed in light of its decision to grant summary judgment on the conversion claim. And, owing to its holding on plaintiffs' conversion claim, the majority does not address the unjust enrichment claim. However, I believe that plaintiffs established that defendant was enriched at plaintiff's expense [*10]and that it would be "against equity and good conscience" to permit defendant to retain the $96,000 (Mandarin Trading Ltd v Wildenstein, 16 NY3d 173, 182 [2011] [internal quotation marks omitted]). Thus, I would have affirmed the judgment on the ground that plaintiffs demonstrated their entitlement to summary judgment on the unjust enrichment claim.
Judgment, Supreme Court, New York County (Barbara Jaffe, J.), entered February 5, 2021, affirmed, without costs.
Opinion by Rodriguez, J. All concur except Kennedy and Scarpulla JJ. who
dissent in an Opinion by Scarpulla J.
Renwick, J.P., Kennedy, Scarpulla, Rodriguez, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 9, 2022

Footnotes

Footnote 1: The several transfers and their consequences for a claim of conversion are described by this Court in McBride as follows:
"Where, as here, a plaintiff alleges that a defendant converted money, the money 'must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner' (Republic of Haiti v Duvalier, 211 AD2d 379, 384 [1st Dept 1995]). McBride sent her money to Beacon Associates, which sent it to Madoff, who deposited it at JPMorgan. Even if, arguendo, McBride's money was specifically identifiable when she sent it to Beacon Associates, there is no indication that Beacon Associates segregated it when it sent investors' money to Madoff. By the time Madoff deposited investors' money at JPMorgan, McBride's investments would not have been specifically identifiable. The Ryans and the Greenbergs assert conversion claims against BNY, not JPMorgan. JPMorgan sent money to MSIL in London; in turn, MSIL sent money to BNY. By the time BNY got the money, the Ryans' and the Greenbergs' investments would not have been specifically identifiable.
"Even if, arguendo, plaintiffs' money were specifically identifiable, their conversion claims would fail because they had no possessory right or interest in the allegedly converted property (see Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 50 [2006]). Plaintiffs had no possessory right or interest in BMIS's accounts at JPMorgan and BNY; rather, BMIS had the right and interest in those accounts (see Calisch Assoc. v Manufacturers Hanover Trust Co., 151 AD2d 446, 448 [1st Dept 1989])" (135 AD3d at 580).

Footnote 2: Republic of Haiti is similarly distinguishable from the case at bar insofar as there is no fraud or illegality alleged here.

Footnote 3: In finding that the funds here were "specifically identifiable," the majority's holding is inconsistent with SH575 Holdings despite its assertion to the contrary. Moreover, the majority's "clarification" of SH575 Holdings renders the law on conversion in this Department inconsistent.

Footnote 4: For example, in Republic of Haiti v Duvalier, (211 AD2d 379 [1st Dept 1995]), the money that was subject to conversion had been deposited into the defendant's personal bank accounts. As the majority concedes, "there is no indication" that the sum in that case was commingled, unlike the funds here, which were deposited in an IOLA account. In another case cited by the majority, Grocery Delivery E-Servs. USA, Inc. v Flynn, (201 AD3d 585 [1st Dept 2022]), insurance proceeds from a product recall were paid to a nonparty company for the plaintiff's claim and the defendant manager converted the funds. This Court held that the plaintiff's motion to dismiss the conversion claim was properly granted by Supreme Court (id. at 586). It further found that the commingling of the funds with the company's general accounts "[did] not render the conversion claim insufficient, because it was defendant and [the company] who commingled the funds" (id. at 587). Notably, the case cited by Grocery Delivery in support of this finding is a Second Department case, Petrone v Davidoff Hutcher & Citron LLP (150 AD3d 776 [2d Dept. 2017]), which is contrary to our holding in SH575 Holdings (195 AD3d 429). The majority states that the two aforementioned cases are at odds and then simply follows Grocery Delivery. Here, in contrast to Grocery Delivery but as in SH575 Holdings, plaintiff transferred the money into an attorney IOLA account, and thus a conversion claim cannot be established.