OCFBrook Holdings, LLC v TKS Brooklyn Ctr. Holding, LLC (2024 NY Slip Op 51611(U))

[*1]

OCFBrook Holdings, LLC v TKS Brooklyn Ctr. Holding, LLC

2024 NY Slip Op 51611(U)

Decided on November 25, 2024

Supreme Court, New York County

Patel, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 25, 2024
Supreme Court, New York County

OCFBrook Holdings, LLC, Plaintiff,

against
TKS Brooklyn Center Holding, LLC, TKS BROOKDALE MANAGER, LLC, TKS BROOKLYN CENTER LLC, SHAUL SPRUNG, BENJAMIN SCHLOSSBERG, BERNARD S. BERTRAM, SHELBOURNE GLOBAL SOLUTIONS, LLC, JEFFREY AREM, PLAINVIEW HEALTH, LLC, Defendants.

Index No. 154460/2024

Counsel for Plaintiff: Mazin Ahmad Sbaiti, Esq., of Sbaiti & Company PLLC
Counsel for Defendants: Evan M. Newman, Esq., and Gabriel S. Rosenberg, Esq., of Jacobowitz Newman Tversky LLP; Joseph Zelmanovitz, Esq., of Stahl & Zelmanovitz; and Meyer Y. Silber of The Silber Law Firm, LLC

Anar Rathod Patel, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 54—57, 65, 67—68, 70—78, 91 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 59—63, 69, 79—87, 92 were read on this motion to/for DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 98—105, 108 were read on this motion to/for LEAVE TO FILE.
 Relevant Factual 
 [FN1]and Procedural History
The present matter arises from a loan agreement ("Loan Agreement"), a Guaranty ofRecourse Obligations ("Guaranty"), and a promissory note ("Note") by and between Non-Party OWS BCA Funding, LLC ("OWS") as Lender and Defendant TKS Brooklyn Center Holding, LLC ("TKS Holding" or "Borrower"). NYSCEF Doc. No. 61 at 3 (Compl.). Plaintiff OCFBrook Holdings, LLC ("Plaintiff") is the successor of rights of Non-Party OWS. Id. at ¶ 1. Plaintiff is a Delaware limited liability company with its principal place of business in New York. Id. Defendants TKS Holding, TKS Brookdale Manager LLC ("TKS Manager" or "Brookdale"), and TKS Brooklyn Center, LLC ("TKS Center") (collectively, "TKS") are Delaware limited liability companies and share a principal place of business in New York. Id. at ¶ 6. 
Defendant Shaul Sprung ("Sprung") acted as a guarantor for the Loan Agreement, is a natural person, and a resident of New York. Id. at ¶ 5. Defendant Sprung was "the original deal sponsor and entity manager" for Defendant TKS Holding. Id. Defendant Bernard S. Bertram ("Bertram) also acted as a guarantor for the Loan Agreement, is a natural person, and a resident of New York. Id. at ¶ 2. Defendant Benjamin Schlossberg ("Schlossberg") acted as a third guarantor for the Loan Agreement, is a natural person, and a resident of New Jersey. Id. at ¶ 3. Defendant Shelbourne Global Solutions, LLC ("Shelbourne") is a Delaware limited liability company headquartered in New York and its managing members are Defendants Bertram and Schlossberg. Id. at ¶ 4.
In June 2021, Defendant Sprung applied for a commercial loan in the amount of $15,050,000 from Non-Party OWS. Id. at ¶ 15. "The application required [Defendant] Sprung to sponsor and form a single purpose entity as the borrower" resulting in the creation of Defendant TKS Holding. Id. The loan was to be secured by, among other things, a mortgage encumbering a multi-tenant commercial office building known as the Brookdale Corporate Center I and II, located at 6200 and 6300 Shingle Creek Parkway, Brooklyn Center, Minnesota 55430 ("Property"). Id. at 1; see also NYSCEF Doc. No. 81 at 1 (Loan Agreement). To acquire the loan, Defendant Sprung, "and his backers," Defendants Bertram, Schlossberg, and Shelbourne "portrayed the Property as having significant leasing momentum, with several leases being signed recently." NYSCEF Doc. No. 61 ¶ 16. The largest of the leases was with Defendant Plainview Healthcare Group ("Plainview"). Id. Plaintiff maintains that it relied upon the "intentional misrepresentations and/or fraud regarding the Property, including the representations regarding Plainview Healthcare Group's lease," of Borrower and Sprung in entering into the Loan Agreement and Guaranty. Id. at ¶ 47.
Defendant Plainview is not a registered entity in any jurisdiction and is alleged to have its principal place of business in New York. Id. at ¶ 7. Defendant Plainview's Chief Operating Officer is Defendant Jeffrey Arem ("Arem"). Id. Defendant Arem is a natural person and a resident of New York. Id. at ¶ 8. Defendant Plainview was paying "an increasing annual rent of approximately one hundred-fifty thousand dollars [$150,000], plus their pro rata share of operating expenses of approximately one hundred thirty-five thousand dollars [$135,000] per year." Id. at ¶ 16.
In September 2021, Non-Party OWS agreed to loan TKS Holding $14,550,000. Id. at ¶ 17. Defendant Sprung entered into the Loan Agreement with Non-Party OWS. NYSCEF Doc. No. 81. "The Loan was secured by a properly perfected lien on the Property and the personal guaranties of [Defendants] Shaul Sprung, Bernard S. Bertram, and Benjamin Schlossberg which were given on a joint and several basis." NYSCEF Doc. No. 61 at ¶ 18; see also NYSCEF Doc. No. 82 (Guaranty of Recourse Obligations). Accordingly, on September 20, 2021, Defendants Bertram, Schlossberg, and Sprung ("Guarantors") executed the Guaranty on a joint and several basis. NYSCEF Doc. No. 82.
The terms of the Loan Agreement specified that the: (1) interest "was to be paid in monthly payments beginning November 9, 2021, until the Loan was paid off in full;" and (2) principal "was due at the earlier of the maturity date or the date that [Non-Party OWS] accelerated the Loan due to a default." NYSCEF Doc. No. 61 at ¶¶ 19—20; see also NYSCEF Doc. No. 81 at §§ 2.2.1(a)—(b). Non-Party OWS disbursed $13,800,000 at closing and withheld $750,000 for "tenant improvements and payment of leasing commissions which would be disbursed upon satisfaction of certain conditions." NYSCEF Doc. No. 61 at ¶ 21; see also NYSCEF Doc. No. 81 at § 2.1.2. 
Subsequently, Plaintiff succeeded Non-Party OWS's rights and obligations under the Loan Agreement "and is the assignee of all of [Non-Party OWS's] rights and claims related thereto." NYSCEF Doc. No. 61 at ¶ 22.
Defendants Sprung, TKS, and Shelbourne
At one point, Defendant Sprung was either employed by, or affiliated with, Defendant Shelbourne. Id. at ¶ 24. Defendant Sprung subsequently became the manager of TKS Manager, "which controlled [TKS Center.]" Id. at ¶ 25. In this capacity, Defendant Sprung acted on behalf of TKS Holding and "signed all Loan Documents and certificates on behalf of [TKS Holding]." Id.
Over time, Defendant Sprung became less engaged and, by late 2022, entirely unreachable by Non-Party OWS and Plaintiff. Id. at ¶ 27. Pursuant to TKS Manager's Operating Agreement, Defendant Shelbourne removed Defendant Sprung as manager for cause in January 2023; he was replaced by Defendant Shelbourne. Id. at ¶¶ 26—27. 
Defendants Plainview and Arem
Defendant Plainview was a purported tenant in the Property. Id. at ¶ 16. Plaintiff alleges that the lease was signed on behalf of Defendant Plainview by Defendant Arem. Id. at ¶ 29. "At closing, [TKS Holding] provided [Non-Party OWS] an estoppel certificate from [Plainview] signed by Arem," noting that Arem was the Chief Operating Officer of Plainview. Id. Plaintiff alleges that Arem was "affiliated" with Defendants TKS and/or Sprung. Id. at ¶ 31. TKS Holding provided financial documents indicating that it had paid Arem at least $70,000.00, "around the time the Plainview lease was signed, with no written business justification." Id. 
Non-Party OWS later visited the Property and observed that the spaces allegedly leased by Plainview were entirely vacant. Id. at ¶ 32. Non-Party OWS further observed that the space was still being utilized as storage by the prior tenant and was not improved for Plainview's purported occupancy. Id. Beginning in the summer of 2023, other tenants of the Property began [*2]to vacate the premises and terminate their leases. Id. at ¶¶ 33—34. 
Events of Default of Defendant TKS Holding
After the tenants began terminating their leases, Defendant TKS Holding ceased making monthly payments as required by the Loan Agreement and Note. Id. at ¶ 35. Further, Defendant TKS Holding failed to turn over the tenants' security deposits, prepaid rent, and termination payments to Non-Party OWS as required by the Loan Agreement. Id. at ¶ 36. Additionally, Defendant TKS Holding "misappropriated operating cash flow to pay for tenant improvements and leasing commissions . . . causing several vendors to refuse to work at the Property," and "converted property tax refunds payable to [Non-Party OWS]" for their own benefit. Id.
In August 2023, after being assigned the rights associated with the Loan Agreement, Plaintiff accelerated the amount due and commenced foreclosure on the Property in Minnesota state court against Defendant TKS Holding, Non-Party St. Paul Construction Company, and Non-Party Clean Response, Inc. Id. at ¶¶ 40—41. A Sheriff's Sale occurred on April 8, 2024, and an Order confirming the same was entered on April 19, 2024. Id. at ¶ 42; see also NYSCEF Doc. No. 85 (Order of Hon. Nelson Peralta). After the sale, a deficiency in the amount of $9,157,500.26 remains. NYSCEF Doc. No. 61 at ¶ 42; see also NYSCEF Doc. No. 85 at ¶¶ 3—4.
On May 13, 2024, Plaintiff commenced the present action by filing the Summons, Supplemental Summonses, and Complaint. NYSCEF Doc. Nos. 1—35. The Complaint alleges five causes of action: (I) breach of contract against Borrower TKS Holding and the Guarantors (Sprung, Bertram, and Schlossberg); (II) breach of contract against Plainview and Arem; (III) fraud and aiding and abetting fraud against TKS, Plainview, Arem, and the Guarantors; (IV) tortious interference/aiding and abetting against Plainview and Arem; and (V) joint enterprise liability against TKS, Brookdale, Shelbourne, and the Guarantors. NYSCEF Doc. No. 61. 
On June 25, 2024, all parties appeared before this Court for a Preliminary Conference. NYSCEF Doc. No. 51 (Preliminary Conference Order). During the conference, Defendants Plainview and Arem argued that the signatures purportedly belonging to Defendant Arem on behalf of a fictious entity "Plainview Health, LLC" were forged on the lease and related documents without Defendant Arem's permission. NYSCEF Doc. No. 64 at 6—7 (06/25/24 Tr.). Defendants Plainview and Arem further stated that the entity belonging to Defendant Arem is known as "Plainview Healthcare Partners, LLC," not Plainview Healthcare Group as alleged in the Complaint, or Plainview Health, LLC, as identified in certain of the exhibits to the Complaint. Id. at 7. Defendants Plainview and Arem asserted that Defendant Arem did not sign "any lease," nor "any NDA." Id. The Court ordered Defendants Plainview and Arem to provide all parties with samples of Defendant Arem's signature to compare with his purported signature on the lease and related documents. Id. at 10—11.
On July 18, 2024, Defendants Plainview and Arem filed a Motion to Dismiss the Complaint (Motion Sequence 001). NYSCEF Doc. Nos. 54—57. Plaintiff filed its Opposition on August 19, 2024. NYSCEF Doc. Nos. 70—78. Defendants Plainview and Arem filed their Reply on August 29, 2024. NYSCEF Doc. No. 91. 
On July 19, 2024, Defendants TKS, Schlossberg, Bertram, and Shelbourne filed their Motion to Dismiss the Complaint (Motion Sequence 002). NYSCEF Doc. Nos. 59—63. Plaintiff filed its Opposition on August 19, 2024. NYSCEF Doc. Nos. 79—87. Defendants TKS, [*3]Schlossberg, Bertram, and Shelbourne's filed their Reply on August 30, 2024. NYSCEF Doc. No. 92. Defendant Sprung has not moved to dismiss the Complaint, but filed an Answer on July 18, 2024. NYSCEF Doc. No. 58. 
On August 18, 2024, Plaintiff filed a Notice of Partial Discontinuance of Count III (fraud/abetting and abetting fraud) against Defendants Bertram and Schlossberg, and Count IV (tortious interference/aiding and abetting) against Defendants Arem and Plainview. NYSCEF Doc. No. 88. 
On September 12, 2024, the parties appeared before the Court regarding the status of mediation and/or settlement. NYSCEF Doc. No. 107 (09/12/24 Tr.). During this appearance, Plaintiff conceded that the signatures on the lease agreement and NDA, purportedly belonging to Defendant Arem, were not sufficiently similar to the signature samples provided by Defendants Plainview and Arem. Id. at 5. On September 20, 2024, Plaintiff filed a Notice of Discontinuance of its claims against Defendants Plainview and Arem. NYSCEF Doc. No. 106. Accordingly, the Motion to Dismiss brought by Defendants Arem and Plainview (Mot. Seq. 001) is DENIED as moot, Counts II and IV of the Complaint are dismissed in their entirety, and Count III is dismissed as to Defendants Bertram, Schlossberg, Plainview, and Arem pursuant to the August 18, 2024 and September 20, 2024 Notices of Partial Discontinuance.
On September 14, 2024, Plaintiff filed Motion Sequence 003 seeking leave to file a sur-reply in Motion Sequences 001 and 002. NYSCEF Doc. Nos. 98—101. Defendants Plainview and Arem filed their Opposition on September 16, 2024, to which Plaintiff replied on September 18, 2024. NYSCEF Doc. Nos. 103—104. Defendants TKS, Schlossberg, Bertram, and Shelbourne filed their Opposition on September 20, 2024, to which Plaintiff replied on September 22, 2024. NYSCEF Doc. Nos. 105; 108. 

 Legal Discussion and Analysis
Plaintiff's Motion for Leave to File Sur-Reply

"While unauthorized surreplies containing new arguments generally should not be considered, the Supreme Court has the authority to regulate the motion practice before it, as well as the discretion to determine whether to accept late papers or even surreply papers for 'good cause.'" U.S. Bank Tr., N.A. v. Rudick, 67 N.Y.S.3d 646, 647 (2d Dept. 2017) (quoting CPLR § 2214(c)). "The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion." Dannasch v. Bifulco, 585 N.Y.S.2d 360 (1st Dept. 1992). "This rule, however, is not inflexible, and a court, in the exercise of its discretion, may consider a claim or evidence offered for the first time in reply where the offering party's adversaries responded to the newly presented claim or evidence." Kennelly v. Mobius Realty Holdings LLC, 822 N.Y.S.2d 264 (1st Dept. 2006). 
Here, Plaintiff contends that Defendants' Reply contains new arguments as to a joint enterprise theory of liability and new cases regarding reliance and loss causation positions that necessitate filing a sur-reply. NYSCEF Doc. No. 99 (Pl. Mem. of Law). The portion of Plaintiff's Motion Seeking Leave to File Sur-Reply in Motion Sequence 001 is DENIED as moot, pursuant to the Notice of Discontinuance referenced supra. 
The Court is unconvinced that new arguments are raised in Defendants' Reply in Motion [*4]Sequence 002. In their Memorandum of Law in support of their Motion to Dismiss, Defendants argue that New York does not have a cause of action based on "joint enterprise" for corporate entities. NYSCEF Doc. No. 63 at 12. Defendants instead, and in apparent good faith, speculate that Plaintiff intended to plead "concerted action," and argue based on this speculation. Id. at 12—13. In response, Plaintiff affirms that Plaintiff intended to plead "joint enterprise," and cites to case law to argue that joint enterprise is a distinct cause of action from concerted action. NYSCEF Doc. No. 79 at 12—13. Plaintiff cites to three cases: (1) Matter of Seagroatt Floral Co., Inc., 583 N.E.2d 287 (NY 1991); (2) Catania v. Liriano, 2021 WL 12178290 (NY Cty. Sup. Ct. 2021); and (3) Fairbairn v. State, 484 N.Y.S.2d 682 (3d Dept. 1985), aff'd, 485 N.E.2d 239 (NY 1985). Id. In their Reply, Defendants repeat that there is no cause of action for joint enterprise liability among corporations, and argue that the same three cases Plaintiff cites in its Opposition are inapplicable to the present matter. NYSCEF Doc. No. 92 at 4—8. 
Plaintiff also contends that Defendants define the term "actual losses" as "out-of-pocket" damages for the first time in their Reply. NYSCEF Doc. No. 99 at 3. Defendants' Memorandum of Law cites to Kumiva Group, LLC v. Garda USA Inc., which states, in relevant part, "[w]hile a plaintiff alleging breach of contract is entitled to damages restoring the full benefit of the bargain, a plaintiff alleging fraudulent inducement is limited to 'out of pocket' damages, which consist solely of the actual pecuniary loss directly caused by the fraudulent inducement." 45 N.Y.S.3d 410 (1st Dept. 2017) (citing Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370 (NY 1996)); see also NYSCEF Doc. No. 63 at 10—11. Defendants' Reply does not alter this proposition. NYSCEF Doc. No. 92 at 9—10. Rather, Defendants' Reply reiterates the same argument—that Plaintiff has not alleged out-of-pocket damages incurred from the alleged fraud—raised in their Memorandum of Law. NYSCEF Doc. No. 63 at 13—14.
Accordingly, Plaintiff's Motion Seeking Leave to File Sur-Reply (Motion Sequence 003) is DENIED. 
Defendants' TKS, Schlossberg, Bertram, and Shelbourne Motion to Dismiss the Complaint
Defendants move to dismiss the Complaint pursuant to CPLR §§ 3211 (a)(3), (a)(7), and the doctrine of res judicata. In light of Plaintiff's Notices of Discontinuance, the following causes of action remain: Count I (breach of contract) against Borrower TKS Holding and the Guarantors; Count III (fraud/aiding and abetting fraud) against Defendant TKS [FN2]
; and Count V (joint enterprise liability) against Defendants TKS, Shelbourne, and the Guarantors.
I. CPLR § 3211(a)(3)
Defendants argue that Plaintiff lacks the capacity to bring the present suit pursuant to New York LLC Law §§ 808(a) and 802 where it did not obtain a certificate of authority to do business in New York at the time the suit was commenced. NYSCEF Doc. No. 63 at 8—9. CPLR § 3211(a)(3) states, in relevant part, "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . . (3) the party asserting the [*5]cause of action has not legal capacity to sue . . . ." NY LLC Law states, "[a] foreign limited liability company doing business in this state without having received a certificate of authority to do business in this state may not maintain any action, suit or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state." NY LLC Law § 808(a). 
Plaintiff rebuts: (1) that Plaintiff is not doing business in New York and that bringing legal action in New York does not constitute "doing business" within the state; (2) that Defendants' contentions are premature as Plaintiff has until the resolution of the action to procure a certificate of authority; and (3) that Plaintiff has already acquired a certificate of authority thereby curing any defect.
"Those few cases discussing Limited Liability Company Law § 808 (a) rely upon the case law analyzing Business Corporation Law § 1312, which has nearly identical language." Shell Consulting Group LLC v. Nims, 198 N.Y.S.3d 507 (NY Cty. Sup. Ct. 2023). "A defendant relying upon BCL § 1312(a) has the burden of proving that the foreign corporate plaintiff was 'doing business' in New York without authority." Maro Leather Co. v. Aerolineas Argentinas, 617 N.Y.S.2d 617, 619 (NY App. Term. 1st Dept. 1994) (quoting Great White Whale Advert., Inc. v. First Festival Productions, 438 N.Y.S.2d 655 (3d Dept. 1981). "Absent adequate proof to establish that the plaintiff is doing business in New York, the presumption is that the plaintiff is doing business in its state of incorporation . . . ." Cadle Co. v. Hoffman, 655 N.Y.S.2d 633, 634 (2d Dept. 1997). 
"The mere maintenance of an action by such a foreign corporation does not constitute 'doing business' within the State." De Ran Landscaping Serv., Inc. v. De Ran Industries, Inc., 487 N.Y.S.2d 160, 161 (3d Dept. 1985); see also NY BCL § 1301 (b). However, even if established, LLC Law § 808(a) does not "avail defendants, as plaintiff LLC's failure to obtain a certificate of authority to do business in New York before initiating the action is not a fatal jurisdictional defect and such certificate has since been obtained." Basile v. Mulholland, 899 N.Y.S.2d 851 (1st Dept. 2010). 
Defendants flatly contend that Plaintiff is doing business within the state without having received a certificate of authority. NYSCEF Doc. No. 63 at 8—9. However, Defendants' Memorandum of Law and the Affirmation of Gabriel S. Rosenberg, Esq. lack factual support to establish what, if any, business Plaintiff conducts within this state. See id.; see also NYSCEF Doc. No. 60 at ¶¶ 4—6 (Rosenberg Aff.). Further, Plaintiff has established that the present suit is insufficient to show that Plaintiff is doing business within New York, and that Plaintiff has procured a certificate of authority following the commencement of this action thereby curing any defect. Thus, the portion of Defendants' Motion to Dismiss the Complaint pursuant to CPLR § 3211(a)(3) is DENIED.
II. CPLR § 3211(a)(7)
"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that: . . . (7) the pleading fails to state a cause of action." CPLR § 3211(a)(7). On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." CSC Holdings, LLC v. Samsung Elecs. Am., Inc., 146 N.Y.S.3d [*6]17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." Connaughton v. Chipotle Mexican Grill, Inc., 75 N.E.3d 1159, 1162 (NY 2017) (internal citations omitted). Courts will grant a motion to dismiss where a movant states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. See e.g., Arnon Ltd v. Beierwaltes, 3 N.Y.S.3d 31, 33 (2015).
a. Breach of Contract (Count I) Against Borrower and the Guarantors
To state a claim for breach of contract, the plaintiff, "usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." 34-06 73, LLC v. Seneca Ins. Co., 198 N.E.3d 1282, 1287 (NY 2022) (internal citations omitted). The parties here do not dispute the existence or validity of the Loan Agreement, Note, or Guaranty.[FN3]
See NYSCEF Doc. Nos. 11—12, 17. 
Plaintiff pleads that Defendants Borrower and Guarantors breached the Loan Agreement and Guaranty by: (1) failing to remit timely payments of principal; interest and other financial obligations; (2) allowing TKS Holding's state registration to lapse; (3) leasing any portion of the property to Arem and Plainview due to a perceived financial affiliation; (4) failing to maintain the property with funds earmarked for tenant improvement and leasing commission costs; and (5) failing to provide full financial reporting. NYSCEF Doc. No. 61 at ¶¶ 46—47, 64—70. The Court observes that, as a result of these breaches, Plaintiff commenced a foreclosure proceeding in Minnesota state court against Defendant Borrower and other non-parties to this action. Further, Plaintiff contends that the Borrower and Guarantors are jointly and severally liable for these breaches. Id. at ¶ 47. Plaintiff further asserts that the Guarantors were required to tender "'the full, prompt and complete payment' of Guaranteed Obligations of Borrower" as Guarantors. Id. at ¶ 72. "Plaintiff accordingly pleads for damages for the breaches of the Note, Loan Agreement, Guaranty and for all unpaid Loan principal, interest, default interest, costs and attorneys' fees, as provided for in the Loan Documents." Id. at ¶ 77.
As to damages, however, Defendants Borrower and the Guarantors argue that, by the terms of the contracts, Plaintiff's recovery is limited to actual losses and that Plaintiff has not pled "actual losses" under the Loan Agreement and Guaranty. NYSCEF Doc. No. 63 at 13—14. Defendants contend that the speculative loss incurred by Plaintiff in executing the loan is insufficient to establish damages pursuant to the Loan Agreement. Id.
"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (NY 2002). "Interpreting a contract 'is the process of determining from the words and other objective manifestations of the parties what must be done or forborne by the respective parties in order to confirm to the terms of their agreements.'" Tomhannock, LLC v. Roustabout [*7]Resources, LLC, 128 N.E.3d 674, 675 (NY 2019). "The best evidence of what parties to a written agreement intend is what they say in their writing." Slamow v. Del Col, 594 N.E.2d 918, 919 (NY 1992). "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield, 780 N.E.2d at 170 (NY 2002). "A contract is ambiguous if 'on its face [it] is reasonably susceptible of more than one interpretation.' If the court concludes that a contract is ambiguous, it cannot be construed as a matter of law, and dismissal under CPLR 3211(a)(7) is not appropriate." Telerep, LLC v. U.S. Intern. Media, LLC, 903 N.Y.S.2d 14, 15 (1st Dept. 2010). 
Defendants point to Section 9.4(b)(i) of the Loan Agreement and argue that this section is "akin to the injury analysis" required when pleading fraud. NYSCEF Doc. No. 63 at 14. Section 9.4(b)(i) states,
Notwithstanding the provisions of this Section 9.4 to the contrary, Borrower and Guarantor shall be personally and jointly and severally liable to Lender for the aggregate Losses Lender incurs due to: (i) fraud, intentional or willful misrepresentation, gross negligence or willful misconduct by Borrower or any Guarantor or any of their Affiliates, agents or representatives in connection with the Loan.
NYSCEF Doc. No. 81 at 116. In response, Plaintiff argues that the Loan Agreement does not use the term "actual loss" and that the Loan Agreement defines losses such that Defendants' argument would require the Court to modify the plain language of the Loan Agreement. NYSCEF Doc. No. 79 at 10—12. Plaintiff contends that the Loan Agreement is unambiguous and was clearly intended to cover all losses, not just "out-of-pocket" costs as is required for fraud. Id. at 7; see also NYSCEF Doc. No. 82 at 1—2. Accordingly, the allegations in the Complaint as to damages are consistent with the plain meaning of Section 9.4(b)(i) of the Loan Agreement and the definition of "Guaranteed Obligations" and losses payable under the Guaranty. NYSCEF Doc. No. 79 at 7—8; NYSCEF Doc. No. 82 at 1—2. "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." Greenfield, 780 N.E.2d at 171. 

Second, Plaintiff argues that the Court should not interpose the proximate cause requirement applicable to fraud claims in a breach of contract action. The Court agrees. "To allege a cause of action based on fraud, plaintiff must assert 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" Connaughton, 75 N.E.3d at 1163 (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370 (NY 1996)). "The purpose of an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." Reno v. Bull, 124 N.E. 144, 146 (NY 1919) [emphasis added]. "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." Lama Holding Co., 668 N.E.2d at 1373 [emphasis added]. 
By comparison, the Loan Agreement defines the term "Losses" as:
[A]ny and all claims, suits, liabilities (including, without limitation, strict liabilities), [*8]actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).
NYSCEF Doc. No. 81 at 21—22. The terms of the Loan Agreement as to Losses are broader than the "out-of-pocket" definition required for fraud. For instance, the proximate cause required to recover for fraud does not exist within the definition provided in the Loan Agreement, which replaces the causation requirement for fraud with "any and all." Further, Section 9.4(b)(i) explicitly lists: (1) fraud; (2) intentional misrepresentation; (3) willful misrepresentation; (4) gross negligence; and (5) willful misconduct. Through their writings, the parties explicitly indicate they have no intent to limit damages sought by Plaintiff to only those costs proximately caused by fraud. As Plaintiff identified, had the parties intended to limit the definition, Non-Party OWS and Plaintiff would have included language establishing proximate causation and limiting "Losses" to pecuniary costs. NYSCEF Doc. No. 79 at 10—16. Applying such a definition would necessarily require this Court to subscribe a term not within the four corners of the contract.
As such, the portion of Defendants TKS, Shelbourne, Bertram, and Schlossberg's Motion to Dismiss Count I of the Complaint for breach of contract against the Borrower, Bertram, and Schlossberg, pursuant to CPLR § 3211(a)(7), is DENIED. 
b. Fraud/Aiding and Abetting Fraud (Count III) Against Defendant TKS Holding (Borrower), TKS Manager, and TKS Center
Defendants do not seek to dismiss Count III against Defendant TKS Holding pursuant to CPLR § 3211(a)(7). NYSCEF Doc. No. 63 at 9—12. As to Defendants TKS Center and TKS Manager, Plaintiff alleges that these entities are jointly and severally liable for any fraud or aiding and abetting fraud pursuant to the terms of the Loan Agreement. NYSCEF Doc. No. 61 at ¶¶ 89—115. "To allege a cause of action based on fraud, plaintiff must assert 'a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" Connaughton, 75 N.E.3d at 1163 (quoting Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370 (NY 1996)). "The essential constitutents [sic] of the action are tersely and adequately stated as representation, falsity, scienter, deception, and injury." Ochs v. Woods, 117 N.E. 305, 306 (NY 1917). "A false representation does not, without more, give rise to a right of action, either at law or in equity, in favor of the person to whom it is addressed. To give rise, under any circumstances, to a cause of action, either in law or equity, reliance on the false representation must result in injury." Sager v. Friedman, 1 N.E.2d 971, 973 (NY 1936). Defendants argue that Plaintiff failed to allege: (1) that Plaintiff reasonably relied on the representations or omissions of Defendant TKS; and (2) that Plaintiff suffered adequate injury to allege fraud. NYSCEF Doc. No. 63 at 9—12. 
i. Misrepresentations, Omissions, and Reasonable Reliance
The Complaint is entirely devoid of any misrepresentations or omissions made by TKS Center or TKS Manager, rather the Complaint alleges that Defendant Sprung made [*9]misrepresentations and makes no mention of the direct involvement of TKS Center and TKS Manager. NYSCEF Doc. No. 61 at ¶¶ 89—115. "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail." CPLR § 3016(b). "Although there is certainly no requirement of 'unassailable proof' at the pleading stage, the complaint must 'allege the basic facts to establish the elements of the cause of action.'" Eurycleia Partners, LP v. Seward & Kissel, LLP, 910 N.E.2d 976, 979 (NY 2009) (quoting Pludeman v. N. Leasing Sys., Inc., 890 N.E.2d 184 (NY 2008)). Plaintiff does not allege that Defendants TKS Center or Manager omitted any material information or that TKS Center or Manager had any opportunity, let alone duty, to correct a previous material misrepresentation. See id. Plaintiff further fails to allege any form of "scienter" as to Defendants TKS Center and Manager. Id.; see also Ochs, 117 N.E. at 306. Accordingly, Plaintiff does not sufficiently plead that either TKS Center or Manager made material misrepresentations or omissions to meet the heightened particularity standard of CPLR § 3016.[FN4]

ii. Damages
As noted supra, to plead fraud, Plaintiff must establish damages pursuant to the out-of-pocket rule. Lama Holding Co., 668 N.E.2d at 1373. A claim for fraud fails, as a matter of law, where "it violates the 'out-of-pocket' rule governing damages recoverable for fraud." Starr Found. v. Am. Intern. Group, Inc., 901 N.Y.S.2d 246, 248 (1st Dept. 2010). The Court of Appeals has consistently held that the, "loss of a contractual bargain, the extent, and, . . . the very existence of which is completely undeterminable and speculative," is insufficient to establish damages for fraud. Dress Shirt Sales, Inc. v. Hotel Martinique Associates, 190 N.E.2d 10, 12—13 (NY 1963). Further, "[t]o demonstrate fraud, a plaintiff must show, inter alia, that a defendant's misrepresentations were the direct and proximate cause of the claimed losses." MBIA Ins. Corp. v. Countrywide Home Loans, Inc., 928 N.Y.S.2d 229, 234 (1st Dept. 2011). Here, Plaintiff claims that Plaintiff is entitled to recover "$15,802,132.90 due to unpaid interest (e.g., the lost opportunity cost of those funds), attorneys' fees and expenses for the foreclosure, protective advances made on behalf of the property, and another $945,367.36 in interest accrued through the final foreclosure date . . . ." NYSCEF Doc. No. 79 at 11. However, any damages [*10]sought pursuant to unpaid interest, even if contractually obligated, does not fit within the definition of out-of-pocket costs such that it would be recoverable under a fraud cause of action as such damages would be compensating Plaintiff for "what they might have gained." Lama Holding Co., 668 N.E.2d at 1373. 
Furthermore, "[a] failure to perform promises of future acts is merely a breach of contract to be enforced by an action on the contract. A cause of action for fraud does not arise when the only fraud charged relates to a breach of contract." Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd., 484 N.Y.S.2d 834, 835 (1st Dept. 1985). Fraud allegations which are redundant to breach of contract allegations are consistently dismissed. See Miller v. Volk & Huxley Inc., 355 N.Y.S.2d 605 (1st Dept. 1974) ("The second cause of action alleges fraudulent breach of contract involving these same negotiations. It is recognized that a cause of action for fraud will not arise when the only fraud charged relates to a breach of contract."). 
Plaintiff contends that the contract required Defendants to correct any prior misrepresentations or otherwise be subject to joint and/or vicarious liability. NYSCEF Doc. No. 61 at ¶¶ 104, 129. Further, through Plaintiff's arguments: (1) that the Loan Agreement entered into by the parties establishes Defendant Shelbourne's liability for any fraud committed by Defendants TKS and Sprung; (2) that the Loan Agreement established Defendant Shelbourne's ongoing duty to correct misrepresentations made by Defendants TKS and Sprung; and (3) that the contract absolves the need for proximate causation or out-of-pocket losses, Plaintiff has implicitly admitted to bringing the cause of action for fraud pursuant to the contractual terms of the Loan Agreement. In other words, Plaintiff relies on Defendants' perceived contractual obligations to underpin Plaintiff's fraud allegations. Defendants' obligation to correct any prior misrepresentations, the breach thereof giving rise to the present action, arises entirely out of the Loan documents. NYSCEF Doc. No. 61 at ¶ 104. Thus, Plaintiff implicitly admits that the present cause of action sounding in fraud, would be more appropriately brought as a breach of contract claim. As such, Plaintiff's arguments are not only unconvincing, but entirely injurious to Plaintiff's own claims.
iii. Aiding and Abetting Fraud
Plaintiff further fails to establish the necessary elements for aiding and abetting fraud against Defendants TKS Center and TKS Manager. "In order to plead properly a claim for aiding and abetting fraud, the complaint must allege: '(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud.'" Stanfield Offshore Leveraged Assets, Ltd. v. Metro. Life Ins. Co., 883 N.Y.S.2d 486, 489 (1st Dept. 2009) (quoting UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F. Supp. 2d 485 (S.D.NY 2003)).[FN5]
As discussed supra, Plaintiff's claim of fraud is insufficiently pled to survive a motion to dismiss. Accordingly, Plaintiffs claim [*11]of aiding or abetting fraud, similarly, cannot survive as there is no underlying fraud pled. Stanfield Offshore Leveraged Assets, Ltd., 883 N.Y.S.2d at 489.
Even if Plaintiff did sufficiently plead an underlying fraud, the Complaint remains facially insufficient as to aiding or abetting fraud. The Complaint fails to plead that Defendants TKS Center or Manager substantially assisted in achieving the fraud. See id. "Substantial assistance exists 'where (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed, and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" Id. Here, Plaintiff argues that TKS Center and TKS Manager are jointly and severally liable for any fraud perpetrated by Defendant Sprung pursuant to the Loan Agreement. NYSCEF Doc. No. 61 at ¶¶ 113—114. The Complaint pleads that Shelbourne had a duty to correct Defendant Sprung's prior misrepresentation; however, the Complaint fails to allege that TKS Center or TKS Manager had the same duty. See NYSCEF Doc. No. 61 at ¶ 104. The Complaint raises no further allegations regarding TKS Center or TKS Manager's involvement in the transaction. 
As such, the portion of Defendants' Motion to Dismiss seeking to dismiss Count III for fraud and aiding and abetting fraud against Defendants TKS Center and TKS Manager is GRANTED. 
c. Joint Enterprise Liability (Count V) Against Defendants TKS, Shelbourne, and Guarantos
Plaintiff's fifth cause of action is "joint enterprise liability" against Defendants TKS, Brookdale [FN6]
, Shelbourne, Bertram, Schlossberg, and Sprung. NYSCEF Doc. No. 81 at 26. 
It is well recognized that a joint enterprise is an endeavor in which two or more persons unite to achieve a common purpose under such circumstances that each has express or implied authority to act for all with respect to the control of the means or agencies employed to execute the plan; in such an enterprise, the negligence of one member may be imputed to the others.
Fairbairn, 484 N.Y.S.2d at 683. Plaintiff alleges that Defendants "formed a joint enterprise under New York law," and "any acts attributed to Sprung or TKS . . . can be imputed jointly and severally to all members of the joint enterprise." Id. at ¶ 133. Plaintiff also alleges that Defendants acted in concert or conspiracy to defraud Plaintiff. Id. at ¶¶ 134—143. 

Defendants TKS, Shelbourne, Schlossberg, and Bertram rebut that: (1) New York does not recognize a joint enterprise cause of action; or, in the alternative, (2) if New York does have a joint enterprise cause of action: (a) joint enterprise liability cannot be used to pierce the corporate veil; (b) the movants did not have equal control over the enterprise; and/or (c) Plaintiff did not sufficiently plead an underlying tort. NYSCEF Doc. No. 92 at 10—11. Notably, Plaintiff discontinued its claims of fraud against Defendants Bertram and Schlossberg, and conceded that Plaintiff does not assert claims of fraud against Shelbourne.
i. Joint Enterprise under New York Law
a. Joint Enterprise, Generally
New York Courts have recognized the concept of joint enterprise in finding multiple parties jointly liable for the same tortious act. "When two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable. This is so because such concerted wrongdoers are considered 'joint tort-feasors' and in legal contemplation, there is a joint enterprise and a mutual agency, such that the act of one is the act of all and liability for all that is done is visited upon each." Ravo v. Rogatnick, 70 NY2d 305, 309 (1987). To establish a liability pursuant under a joint enterprise theory, Plaintiff must establish that: (1) two or more defendants (2) acted in concert in committing a tortious act and (3) caused a single injury. Id. at 310 (citing Slater v. Mersereau, 64 NY 138 (1876)).
b. Joint Enterprise Liability Cannot Pierce the Corporate Veil Absent Additional Information
Similar to this action, Petitioners in Matter of Seagroatt Floral Co., Inc., contended "that imposition of joint and several liability is appropriate here because of the 'numerous organizational, operational and financial' links between the companies, making them 'in reality a single business.'" 583 N.E.2d at 293. However, in that decision, the Court of Appeals stated,
Imposition of joint and several liability, in practical effect, disregarded the fact that two legal entities stood before the court. Under ordinary circumstances, a corporation's independent existence cannot be ignored. Allowing a court—through joint and several liability—to in effect pierce the corporate veils, without the proper inquiry and proof according to established guidelines, undermines bedrock principles of corporate law.
Id. (internal citation omitted). Here, Defendant Sprung acted on behalf of Defendant TKS at the time the Loan Agreement was entered into. NYSCEF Doc. No. 81. Plaintiff's Complaint relies on: (1) the fact that Sprung, Schlossberg, and Bertram worked together at Defendant Shelbourne before Defendant Sprung entered into the Loan Agreement; and (2) that Defendant Shelbourne removed Defendant Sprung, for cause, and replaced Defendant Sprung as Defendant TKS' manager as evidence of a conspiracy or "single business" between the parties. NYSCEF Doc. No. 61 at ¶¶ 128, 134—136. However, while Defendants Bertram and Schlossberg acted as Guarantors for said Loan Agreement, there is no indication that Defendants Bertram and Schlossberg were members or officers of Defendant TKS. See NYSCEF Doc. No. 81 at 145. Indeed, based upon Plaintiff's own submissions, it is evident that Defendants Bertram and Schlossberg were partners in Defendant Shelbourne and that Defendant Shelbourne was a passive minority investor in TKS Holding and, by proxy, TKS Center and entirely unrelated to TKS Manager. Id. Thus, applying a concept such as joint enterprise would deny Defendants the benefit of their corporate structure by impermissibly piercing the corporate veil. 

c. Plaintiff did not Sufficiently Plead that Defendants Had Equal Control Over the Enterprise
Even if this Court entertained piercing the corporate veil, Plaintiff has failed to establish that Defendants Shelbourne, Bertram, and Schlossberg had control over Defendant TKS which is necessary to assert a theory of joint enterprise. "Essential to a finding of a joint enterprise where the negligence of one member may be imputed to the others is the equal right of each member to direct or control the others in respect to the enterprise. Thus, the characterization placed upon an operation by a participant should not be conclusive. Liability will not be imputed under a joint enterprise theory where the element of control is lacking." Catania v. Liriano, 2021 NY Slip Op. 34027(U), at *14 (NY Cty. Sup. Ct. 2021). 
In fact, the Complaint states Defendants Shelbourne, Schlossberg, and Bertram had the power to remove Defendant Sprung from his position at Defendant TKS for cause, indicating a hierarchy. NYSCEF Doc. No. 61 at ¶¶ 126—129. Defendants Shelbourne, Schlossberg, and Bertram's ability and subsequent decision demonstrates that the parties did not possess equal rights controlling the enterprise. See Catania, 2021 NY Slip Op. 34027(U). By establishing that Defendants Shelbourne, Bertram and Schlossberg's only recourse against Defendant Sprung was to remove Defendant Sprung entirely, Plaintiff inadvertently disproved its own theory. Plaintiff did not plead that Defendants TKS, Shelbourne, Bertram, or Schlossberg had the ability to control the enterprise other than by removing Defendant Sprung. Accordingly, Defendants TKS Center, TKS Manager, Shelbourne, Bertram, and Schlossberg could not have had equal rights with Defendant Sprung at the time the alleged torts were committed. 
d. No Underlying Tortious Conduct
Plaintiff fails to sufficiently plead an underlying tort allowing the imposition of joint enterprise liability. Courts have repeatedly held that a theory based in joint enterprise liability must be underscored by tortious conduct by the involved parties. See e.g., Ravo, 70 NY2d at 309 ("[w]hen two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable."); Matter of Seagroatt Floral Co. 583 N.E.2d at 292 ("Joint and several liability, primarily a tort law concept, imposes on each wrongdoer responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss."). Here, the Complaint only includes one cause of action couched in tort law, Count III (Fraud/Aiding and Abetting Fraud). NYSCEF Doc. No. 62 at ¶¶ 89—123. However, pursuant to Plaintiff's Notice of Discontinuance, Count III has been discontinued as against Defendants Schlossberg and Bertram. NYSCEF Doc. No. 88. Further, as per Plaintiff's Memorandum of Law in Opposition, Plaintiff does not assert Count III against Defendant Shelbourne. NYSCEF Doc. No. 79 at 17. As to TKS Center and TKS Manager, as noted supra, Plaintiff's third cause of action is insufficiently pled to survive the present motion. Because no underlying tort claim exists against Defendants TKS Center, TKS Manager, Shelbourne, Schlossberg, and Bertram, it follows that no theory of joint enterprise may be asserted as against these Defendants.
Accordingly, the portion of Defendants TKS, Shelbourne, Schlossberg, and Bertram's Motion to Dismiss Count V of the Complaint, pursuant to CPLR § 3211(a)(7), is GRANTED.
[*12]III. Res Judicata Bars Plaintiff's Claims against Defendant TKS Holding [FN7]
Defendant TKS Holding (Borrower) argues that each of Plaintiff's claims brought against the Borrower are barred by the doctrine of res judicata. NYSCEF Doc. No. 63 at 14—15. Defendant argues that Plaintiff's claims against the Borrower should have been brought before the Minnesota state court during the foreclosure action. Id. Defendants contend that Plaintiff is essentially seeking a deficiency judgment and is barred from doing so now. Id. 
Plaintiff argues that Defendants fail to establish that: (1) the claims accrued before the action was completed; and (2) the claims "were at issue and tried to conclusion." NYSCEF Doc. No. 79 at 9. Plaintiff further argues that foreclosure actions in Minnesota courts are "rather specialized and rigidly regulated by statute." Id. Plaintiff posits that Minnesota statutes do not "provide any opportunity to bring claims collateral to the foreclosure or post foreclosure," relying on the section of Minnesota law that requires collateral actions be stayed or discontinued when a foreclosure action is brought. Id. at 9—10. However, Plaintiff's assertion that the "Minnesota foreclosure tribunal would likely not have entertained" alternative causes of action, lacks any foundation in the applicable law or, as discussed further infra, the filings in the Minnesota Action. NYSCEF Doc. No. 79 at 9; but see NYSCEF Doc. No. 29.
Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action. As a general rule, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.' 
Parker v. Blauvelt Vol. Fire Co., Inc., 712 N.E.2d 647, 649 (NY 1999) (quoting O'Brien v. City of Syracuse, 429 N.E.2d 1158 (NY 1981)). "The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to [*13]do so again." In re Hunter, 827 N.E.2d 269, 274 (NY 2005). "The policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts." Reilly v. Reid, 379 N.E.2d 172, 175 (NY 1978) (internal citations omitted
With reference to the Minnesota foreclosure action, a "judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and concludes all matters of defense which were or might have been raised in the foreclosure action." Jones v. Flushing Bank, 183 N.Y.S.3d 458, 460 (2d Dept. 2023). It has been consistently held that a foreclosure action which has been litigated and decided bars, in essence, all other claims related to the subject property including, but not limited to: (1) negligence; (2) fraud; and (3) breach of contract. Id.; see also Sheodial v. U.S. Bank Natl. Assn., 193 N.Y.S.3d 78 (2d Dept. 2023) (dismissing cause of action grounded in General Business Law § 349 pursuant to the doctrine of res judicata); SSJ Dev. of Sheepshead Bay I, LLC v. Amalgamated Bank, 10 N.Y.S.3d 105 (2d Dept. 2015) (dismissing complaint, which included, among others, claims for: (1) breach of fiduciary duty; and (2) unjust enrichment).
Here, Defendants have filed no documents from the action before the Fourth Judicial District of Minnesota upon which Movant's res judicata claim is premised. However, Plaintiff has filed: (1) the complaint from the Minnesota Action; (2) a transcript from a hearing before Judge James Moore of the Fourth Judicial District in the Minnesota Action; and (3) the Order of Judge Nelson Peralta confirming the Sheriff's sale of the Property.[FN8]
 NYSCEF Doc. Nos. 29, 31, 85. These documents establish: (1) that the Minnesota action was between Plaintiff and Defendant TKS Holding, Non-Party St. Paul Construction Company, and Non-Party Clean Response, Inc; (2) that Plaintiff seeks to recover pursuant to the same Loan Agreement and Note in the Minnesota Action; (3) that, contrary to Plaintiff's contentions, Plaintiff was permitted to plead alternative or additional causes of action; (4) that both Plaintiff and Defendant TKS Holding had an opportunity to appear before the Fourth Judicial District; (5) that the Fourth Judicial District of Minnesota entered an order determining the amount owed by Defendant TKS Holding on January 5, 2024; and (6) that the Minnesota Action culminated in a Sheriff's Sale of the Property on April 8, 2024, reducing the judgment by $7,590,000. NYSCEF Doc. Nos. 29, 31, 85. 
Therefore, this Court finds that there has been a prior adjudication between Plaintiff and Borrower seeking to recover pursuant to the same Loan Agreement and related documents as the present action. In the Minnesota Action, Plaintiff sought to recover under the Loan Agreement and Note by foreclosing upon and selling the Property. NYSCEF Doc. Nos. 29, 31. While Plaintiff did not assert the same causes of action in the Minnesota Action, such failure is not fatal to Movants' res judicata argument as, in the Minnesota Action, Plaintiff sought to recover pursuant to the "same transaction or series of transactions." Parker, 712 N.E.2d at 649. Plaintiff's argument that the Fourth Judicial District would not have accepted the same causes of action pled here is speculative and unsupported by Plaintiff's arguments and citations thereto. [*14]See e.g., U.S. Bank Nat'l Ass'n v. Knoedler, No. A14-1394, 2015 Minn. App. Unpub. LEXIS 314 (Apr. 6, 2015) (holding that eviction proceedings are narrow and but allowing counterclaims when the eviction proceeding is the only available forum.); see also Marinelli Associates v. Helmsley-Noyes Co., Inc., 705 N.Y.S.2d 571, 574 (1st Dept. 2000) ("[Res Judicata] bars not only claims that were actually litigated but also claims that could have been litigated, if they arose from the same transaction or series of transactions."). 
In fact, it appears that Plaintiff could have asserted the causes of action brought in this matter during the Minnesota Action and allowed the Fourth Judicial District of Minnesota to determine the providence of such claims but chose not to. In fact, Plaintiff's Complaint from the Minnesota Action includes numerous alternative causes of action including Money Judgment, Mortgage Foreclosure, and Replevin. NYSCEF Doc. No. 29. Plaintiff cannot now seek to relitigate this transaction or series of transactions in the present action to recover either: (1) the remainder of the judgment; or (2) an amount in excess of the judgment as adjudicated in the Minnesota Action. 
Accordingly, the portion of Defendants TKS, Shelbourne, Schlossberg, and Bertram's Motion to Dismiss Counts I (Breach of Contract), III (Fraud/Aiding and Abetting Fraud), and V (Joint Enterprise) of the Complaint against Defendant TKS Holding, pursuant to the doctrine of res judicata, is GRANTED.
As such, it is hereby
ORDERED that Motion Sequence 001 is DENIED in its entirety as moot; and it is further
ORDERED that Motion Sequence 003 is DENIED in its entirety; and it is further
ORDERED that the portion of Motion Sequence 002 seeking to dismiss the Complaint pursuant to CPLR § 3211(a)(3) is DENIED; and it is further
ORDERED that the portion of Motion Sequence 002 seeking to dismiss Count I (breach of contract) as against Defendants TKS Holding, Bertram, and Schlossberg pursuant to CPLR § 3211(a)(7), is DENIED; and it is further
ORDERED that the portion of Motion Sequence 002 seeking to dismiss Count III (fraud/aiding and abetting fraud) against Defendants TKS Center and TKS Manager is GRANTED; and it is further
ORDERED that, the portion seeking to dismiss Count III as against Shelbourne, Bertram, and Schlossberg is DENIED as moot; and it is further
ORDERED that the portion of Motion Sequence 002 seeking to dismiss Count V (joint enterprise liability) pursuant to CPLR § 3211(a)(7) as against Defendants TKS Center, TKS Manager, Shelbourne, Bertram, and Schlossberg is GRANTED; and it is further
ORDERED that the portion of Motion Sequence 002 seeking to dismiss Counts I, III, and V as against Defendant TKS Holding is GRANTED and the complaint is dismissed as against Defendant TKS Holding; and it is further
ORDERED that the action is severed and continued against the remaining Defendants (Bertram, Schlossberg, and Sprung); and it is further
ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the Court bear the amended caption; and it is further
ORDERED that counsel for the moving party shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the Court's records to reflect the change in the caption herein; and it is further
ORDERED that Defendants Bertram and Schlossberg are directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry.
DATE November 25, 2024
ANAR RATHOD PATEL, A.J.S.C.

Footnotes

Footnote 1:The facts
are taken from the Complaint and are accepted as true for the purposes of the Motions to Dismiss the Complaint.

Footnote 2:Plaintiff's Memorandum of Law in Opposition clarifies that, "Count Three [fraud/aiding and abetting fraud] was not asserted against the [Defendant] Shelbourne entity." NYSCEF Doc. No. 79 at 17.

Footnote 3:Defendant Plainview and Defendant TKS, which assisted Defendants TKS and Sprung in acquiring the subject loan from Non-Party OWS; however, the parties do not challenge the validity of the Loan Agreement, Note, or Guaranty.

Footnote 4:Even if Plaintiff did sufficiently plead fraud or aiding and abetting fraud against TKS Center and TKS Manager, the Complaint fails nonetheless. "Plaintiff must show not only that he actually relied on the misrepresentations, but also that such reliance was reasonable. Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations." Stuart Silver Associates, Inc. v. Baco Dev. Corp., 665 N.Y.S.2d 415, 417 (1st Dept. 1997); see also Johnson v. Cestone, 80 N.Y.S.3d 15 (1st Dept. 2018); Estrada v. Metro. Prop. Group, Inc., 973 N.Y.S.2d 147 (1st Dept. 2013). Plaintiff's own Complaint states that there was observable evidence that the parties purported to have signed leases did not take possession of the Property. NYSCEF Doc. No. 61 at ¶ 32. Even if Plaintiff or Non-Party OWS did rely on the omissions or misrepresentations of TKS Center or TKS Manager, such reliance would not be reasonable as the exercise of ordinary diligence, such as a cursory inspection of the Property, would manifest the falsity of the misrepresentations. 

Footnote 5:"[A] a cause of action for aiding and abetting fraud cannot lie without the underlying fraud having been sufficiently pleaded . . . ." Nabatkhorian v. Nabatkhorian, 127 AD3d 1043, 1044 (1st Dept. 2010). Here, Plaintiff's failure to properly allege reasonable reliance and out-of-pocket damages may be fatal to Plaintiff's cause of action as against Defendants Sprung and TKS Holding.

Footnote 6:The Complaint denotes Defendant TKS Brookdale Manager, LLC, as "Brookdale." NYSCEF Doc. No. 61 at ¶ 6.

Footnote 7:Defendants do not seek to dismiss the Complaint as to Defendants TKS Center, TKS Manager, Shelbourne, Schlossberg or Bertram pursuant to the doctrine of res judicata. "The general doctrine of res judicata gives binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein." In re Shea's Will, 132 N.E.2d 864, 868 (NY 1956). "It has been said that the term privity does not have a technical and well-defined meaning. It denominates a rule, however . . . a person may be bound by a prior judgment to which he was not a party of record. It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." Watts v. Swiss Bank Corp., 265 N.E.2d 739, 743 (NY 1970). The only Defendant in common between the present action and the Minnesota Action is TKS Holding. NYSCEF Doc. No. 29 at 1. Nonetheless, the Loan Agreement denotes that TKS Center, TKS Manager, and, to a lesser extent, Shelbourne, Bertram, and Schlossberg likely share a common interest. NYSCEF Doc. No. 81 at 145. Accordingly, these parties may be considered privies to TKS Holding and claims against them may therefore be barred by the doctrine of res judicata.

Footnote 8:The Court notes the procedural defect on the part of the Movants in failing to provide these documents in tandem with their Motion to Dismiss. Nonetheless, the existence of the Minnesota Action, and documents filed thereto, are not disputed by the parties.